## Staunton

### Lester Grossman v. Glens Falls Insurance Company.

September 4, 1970.

Record No. 7175.

Present, All the Justices.

*Augustus Anninos* (*Howell, Anninos & Daugherty*, on brief), for plaintiff in error.

*Lawson Worrell, Jr.* (*Williams, Worrell, Kelly & Worthington*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

In *State Farm Mutual* v. *Brower*, 204 Va. 887, 890, 134 S. E. 2d 277, 279 (1964), it was not necessary that we decide "whether an insurance policy in a defunct, hopelessly insolvent insurance company is such 'bodily injury liability insurance and property damage liability insurance' as will prevent the automobile it purports to cover

from being 'an uninsured motor vehicle' within the meaning of § 38.1-381 (c) (i)". We decide here that it does not.

Lester Grossman, plaintiff, while operating his automobile, insured under a liability policy issued by Glens Falls Insurance Company, defendant, was injured in an accident that occurred on November 13, 1966, involving an automobile operated by Oscar Everett, who was insured under a liability policy issued by State Fire and Casualty Company of Miami, Florida.

Grossman filed a motion for judgment alleging that his injuries were occasioned by the negligence of Everett. A copy of this motion was served on Glens Falls.

Counsel for State Fire and Casualty answered and defended the action against Everett. Glens Falls did not participate in the defense. Plaintiff recovered a judgment on May 13, 1966 in the amount of $7300. Everett and State Fire and Casualty Company failed to pay the judgment and costs, and demand for payment was made by Grossman on Glens Falls under the uninsured motorist provisions of his automobile liability policy. Glens Falls denied liability.

Thereafter, on June 30, 1968, Grossman filed his motion for judgment in the court below to recover of Glens Falls the amount due on his judgment against Everett, alleging substantially the same facts hereinabove recited, and further that:

"At all times material herein, Oscar Everett was one of the named insureds under a policy issued by State Fire and Casualty Company of Miami, Florida. Plaintiff, however, was of the opinion that Oscar Everett was an uninsured motorist because of information and belief that said insurance company was unable or was refusing to satisfy settlements reached with opposing parties or judgments rendered against its insured. The plaintiff, therefore, advised his own liability carrier, the defendant, Glens Falls Insurance Company, that Oscar Everett was an uninsured motorist and served a copy of the pleadings in the suit against Oscar Everett on the defendant, Glens Falls Insurance Company, so that the plaintiff could avail himself of the uninsured motorist coverage of his policy with Glens Falls Insurance Company."

Glens Falls filed its demurrer to the motion, and it was sustained. We granted Grossman a writ of error to the action of the court sustaining the demurrer, refusing plaintiff the right to amend, and dismissing his action.

It was represented upon argument before us that on October 30, 1968 Grossman secured judgment by default against State Fire and Casualty for the amount due on his judgment against Everett.

Code § 38.1-381 (b) provides that in all bodily injury and property damage liability insurance policies, the insurer shall undertake to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of "an uninsured motor vehicle", within prescribed limits.

Subsection (c) of Code § 38.1-381 provides, in pertinent part, as follows:

> "[T]he term *uninsured motor vehicle* means a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1-1 (8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder. . . ."

Glens Falls denies that the motor vehicle of Everett falls within the above definition. It says that the vehicle was covered by the liability insurance policy of State Fire and Casualty; that this company employed counsel, appeared and defended the action brought against Everett; and that the only thing it has not done is discharge the judgment.

Grossman says that State Fire and Casualty is now unable to pay the judgment and that when he brought his action the company was unable to pay, or was refusing to satisfy settlements reached or judgments rendered against its insureds.[1]

The Uninsured Motorist Law was enacted for the benefit of injured persons, is remedial in nature, and is liberally construed so that the purpose intended may be accomplished. It is primarily concerned with providing adequate compensation for injured insureds when other sources are lacking. A motorist pays an additional premium on his liability policy in order that he might be afforded "coverage" or "protection" in event of an accident with an automobile that is uninsured.

---

[1] State Fire and Casualty Company was found to be insolvent by an order of liquidation entered on June 16, 1969 in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County, Florida.

■ While the facts are dissimilar from those in the case under review, our holding in *State Farm Mutual* v. *Brower, supra,* is pertinent to a decision here:

"State Farm argues that neither National nor any of its receivers 'have made an express denial of coverage' to Mazza and hence that Mazza's automobile was not an uninsured vehicle. But § 38.1-381-(c) (ii) does not say that the denial must be express. It says only that the automobile is an uninsured vehicle if the insurance company 'denies coverage.' There is nothing in the letter of the statute nor, as we believe, in the spirit and purpose of the statute, that requires the denial to be expressed. Denial of coverage clearly may be as effectively made by the conduct of the insurer as by its spoken or written word.

"There is no apparent reason why the words in the phrase 'denies coverage' should not be given their natural and commonly understood meaning in the context in which they are used.

" 'To deny means to withhold, to refuse to grant.' Ballentine's Law Dict., p. 360. A person in distress is denied help when one who hears his cries says nothing but walks away.

" 'Coverage' in the field of insurance means 'protection by insurance policy; inclusion within the scope of a protective or beneficial plan (coverage against liability claims).' Webster's Third New Int. Dict., pp. 524-5.

"An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give. Here National has failed to give Mazza protection against the damages he has 'become legally obligated to pay' which National specifically promised to pay for him. Its failure to appear, to defend and to pay was a denial of coverage within the meaning of § 38.1-381 (c) (ii), and Mazza's car was therefore 'an uninsured motor vehicle.' " 204 Va. at pp. 890-91, 134 S. E. 2d at p. 280.

To give to the language, "denies coverage", of Code § 38.1-381 (c) (ii) the construction contended for by Glens Falls would be a strained interpretation of the law, and would frustrate and subvert the intention of the General Assembly in its enactment. We have said that coverage in the field of insurance means protection, and a denial of coverage can be by conduct as well as in writing or verbally.

It follows that an insurance company that is insolvent and unable to pay an amount which it has obligated itself to pay, by contract with an insured, has thereby denied, withheld and refused payment, and has failed to accord its insured protection and coverage.

Coverage as used in the Uninsured Motorist Law means more than the mere ownership and possession of a contract of automobile liability insurance. The statute contemplates a contract of insurance with a company that is in a financial position, not just to pay a lawyer's fee and defend an action against a policyholder, but to pay any recovery that is had within its policy limits.

Most assuredly a person with an automobile liability insurance policy in an insolvent company is neither covered nor protected, for his company is unable to pay on his behalf "all sums which the insured shall become legally obligated to pay as damages because of bodily injury sustained by any person caused by accident and arising out of the ownership, maintenance and use of the automobile by the insured". Such a person is an uninsured motorist within the meaning and intent of the statute.

In *Katz v. American Motorist Insurance Company*, 244 Cal. App. 2d 886, 53 Cal. Rptr. 669 (Dist. Ct. App. 1966), the court relied on, and cited extensively from, *State Farm Mutual v. Brower, supra*. Involved was a California statute which defined the term "uninsured motorist vehicle" as including a motor vehicle with respect to which the company writing the liability policy thereon denies coverage thereunder. The court rejected the defendant insurer's contention that since the insurer issuing the policy on the vehicle driven by the allegedly negligent party had made no express denial of coverage, the definition did not apply, and in its opinion said:

> "The reasoning of the Virginia court in the *Brower* case is sound, and is consistent with the law and the spirit of the California statute. Insurance Code § 11580.2 is a part of a pattern of statutes which are 'designed to give monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.' . . . Such statutes must be liberally construed to carry out this objective of providing compensation for those injured through no fault of their own. . . .

"The statutory objective is not attained by giving the injured person a claim against an insolvent. Our conclusion is that an insurer who becomes insolvent, 'denies coverage' within the meaning of § 11580.2, Subdivision (b)". 244 Cal. at 890-91, 53 Cal. Rptr. at p. 672.

See also *Stevens* v. *Allied Mutual Insurance Company*, 182 Neb. 562, 564-65, 156 N. W. 2d 133, 136, 26 A. L. R. 3d 873, 877 (1968), which involved the interpretation of a provision of an automobile liability policy defining an uninsured automobile as "an automobile with respect to the . . . use of which . . . there is . . . no bodily injury liability bond or insurance policy applicable at the time of the accident . . . or with respect to which there is a bodily injury liability bond or insurance policy applicable at the time of the accident but the company writing the same denies coverage thereunder. . . ." The court held that:

"The majority rule, almost without contradiction, is that where uninsured motorist statutes or policy provisions have defined an uninsured motorist in the same language as was used in the present policy, subsequent insolvency of an insurer constitutes a denial of coverage within the meaning of the provisions of the policy or statute. [Citing cases including *State Farm Mutual* v. *Brower, supra,* and *Katz* v. *American Motorist Insurance Company, supra.*]" 182 Neb. at p. 566, 156 N. W. 2d at p. 137, 26 A. L. R. 3d at p. 878. See also note on "Insurance-Uninsured Motorist", 26 A. L. R. 3d Section 8 (a) p. 904-909.

In the instant case Glens Falls was advised that its insured, Grossman, had been injured in an accident with Everett. It was notified by the service of process under Code § 38.1-381 (e) (1) that Grossman claimed Everett was an uninsured motorist. Glens Falls was alerted by this notification that its insured was alleging that Everett "was not protected or covered" by his automobile liability policy, and that Grossman accordingly was looking to his own uninsured motorist liability coverage provided by Glens Falls for "protection and coverage".

Glens Falls was then at liberty to take such action as it deemed necessary to protect its rights and the rights of the uninsured motorist. The fact that it made no appearance, and permitted counsel for

State Fire and Casualty to defend, does not affect the rights of the parties to this action. Neither are those rights affected by the default judgment recovered by Grossman against State Fire and Casualty—which judgment Grossman represents is uncollectable.

It is our conclusion that Grossman's motion for judgment stated a good cause of action against Glens Falls and the demurrer thereto should have been overruled.

Accordingly the order of the lower court sustaining the demurrer of defendants and dismissing plaintiff's action is reversed. The case is remanded and reinstated on the docket of the court below for such further proceeding as may be indicated consistent with this opinion.

*Reversed and remanded.*