832 F.2d 282
 Timothy Allen ROSSMAN, Administrator of the Estate of Paula
K. Rossman, deceased; Jodi S. Rossman, Plaintiff-Appellee,
and
Kelly Richards, Plaintiff,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois
corporation, Defendant-Appellant,
and
Consolidated Insurance Company, an Indiana corporation; the
Protective Casualty Insurance Company, a Missouri
corporation; Prudential Property and Casualty Insurance
Company, a New Jersey corporation, Defendant.
Timothy Allen ROSSMAN, Administrator of the Estate of Paula
K. Rossman, deceased; Jodi S. Rossman, Plaintiff-Appellant,
and
Kelly Richards, Plaintiff,
v.
CONSOLIDATED INSURANCE COMPANY, an Indiana corporation; the
Protective Casualty Insurance Company, a Missouri
corporation; State Farm Mutual Automobile Insurance
Company, an Illinois corporation; Prudential Property and
Casualty Insurance Company, a New Jersey corporation,
Defendant-Appellee.
Timothy Allen ROSSMAN, Administrator of the Estate of Paula
K. Rossman, deceased; Jodi S. Rossman; Kelly
Richards, Plaintiff-Appellee,
v.
CONSOLIDATED INSURANCE COMPANY, an Indiana corporation,
Defendant-Appellant,
and
The Protective Casualty Insurance Company, a Missouri
corporation; State Farm Mutual Automobile Insurance
Company, an Illinois corporation; Prudential Property and
Casualty Insurance Company, a New Jersey corporation, Defendant.
Timothy Allen ROSSMAN, Administrator of the Estate of Paula
K. Rossman, deceased; Jodi S. Rossman; Kelly
Richards, Plaintiff-Appellee,
v.
PRUDENTIAL PROPERTY AND CASUALTY INSURANCE COMPANY, a New
Jersey corporation, Defendant-Appellant,
and
Consolidated Insurance Company, an Indiana corporation; the
Protective Casualty Insurance Company, a Missouri
corporation; State Farm Mutual Automobile Insurance
Company, an Illinois corporation, Defendant.
 Nos. 86-1711, 86-1707, 86-1706(L) and 86-1714.
 United States Court of Appeals,
Fourth Circuit.
 Argued June 4, 1987.
Decided Oct. 30, 1987.
 
 Palmer S. Rutherford, Jr., Henry W. Austin, Jr. (Willcox & Savage, P.C., Norfolk, Va., on brief), John George Crandley (Preston, Wilson & Crandley, Virginia Beach, Va., on brief), Alan Brody Rashkind (Vicki H. Devine, Furniss, Davis & Rashkind, Norfolk, Va., on brief), for appellants.
 James Clayton Lewis (John W. Drescher, Lyle, Siegel, Drescher and Croshaw, P.C., Virginia Beach, Va., on brief), for appellees.
 Before SPROUSE, CHAPMAN and WILKINSON, Circuit Judges.
 WILKINSON, Circuit Judge:
 
 
 1
 This declaratory judgment action was brought to determine the rights and obligations of four insurance carriers with respect to two state judgments entered on wrongful death and personal injury claims arising out of an automobile accident. The carriers involved are Consolidated Insurance Company (Consolidated), Protective Casualty Insurance Company (Protective), State Farm Mutual Automobile Insurance Company (State Farm), and Prudential Property and Casualty Insurance Company (Prudential).
 
 
 2
 Paula K. Rossman was killed and Jodi S. Rossman was injured when their 1969 Triumph collided with a 1977 Mazda driven by Kelly Richards. Appellees Timothy A. Rossman, on behalf of the estate of Paula Rossman, and Jodi Rossman sued Kelly Richards in Virginia state court for wrongful death and personal injury. They won judgments against him for $193,353.90 on the wrongful death claim, and $24,000 for compensatory and $10,000 in punitive damages on the personal injury claim.
 
 
 3
 In the declaratory judgment action below, the district court held that Consolidated and Protective were proratably liable to indemnify Kelly Richards to the limits of their respective policies, and that they bore equal responsibility for his lawyers' fees and court costs. It also held State Farm liable for the punitive damages. In addition, the trial court denied the Rossmans' motion for sanctions against Consolidated under Fed.R.Civ.P. 11.
 
 
 4
 Consolidated and State Farm now appeal from the declaratory judgment, and the Rossmans appeal the denial of sanctions. We agree with the district court that Consolidated and Protective are proratably liable on their policies, but we reverse its holding that State Farm is obligated on the punitive claim. We also affirm the district court's denial of sanctions and its allocation of Kelly Richards' defense costs.
 
 I.
 
 5
 Kelly Richards (Kelly) and his father, Richard D. Richards (Richard) bought the Mazda in 1981, with the father contributing most of the purchase price. Both of their names appear on the title. At the time of the purchase, Kelly was living at home with his parents in Rockford, Illinois. Consolidated issued an endorsement covering the Mazda to Richard's auto insurance policy. The policy noted that Kelly was the Mazda's principal driver, and that it was garaged in Illinois. Richard paid the premiums in Illinois.
 
 
 6
 Kelly then enlisted in the Navy, and was assigned to duty at Fort Story in Virginia Beach, Virginia. He asked his father if he could bring the Mazda to Virginia. Richard was reluctant, but told Kelly that he could take the car to Virginia if he obtained his own insurance on it. Kelly obtained some insurance with Protective in September, 1981, but he did not show the policy to his father, and Richard did not drop Kelly from his policy with Consolidated. The collision occurred in October, 1981.
 
 
 7
 Richard's policy with Consolidated provided liability coverage limits of $300,000 per person and $500,000 per accident. The Consolidated policy stated that
 
 
 8
 We will pay damages for bodily injury or property damage for which any covered person becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur.
 
 
 9
 The policy further provided that it applied only to accidents and losses which occurred within the policy territory, defined as "1) The United States of America, its territories or possessions; 2) Puerto Rico; or 3) Canada."
 
 
 10
 Kelly's policy with Protective had liability limits of $10,000 per person and $20,000 per accident, and specifically excluded coverage for punitive damages. Two days before the accident, Jodi Rossman obtained insurance with State Farm for her 1969 Triumph. That policy provided for uninsured motorist protection with maximum coverage limits of $25,000 per person and $50,000 per accident. Jodi Rossman was also the named insured on a Prudential policy covering the family's 1971 Volkswagen. The Prudential policy included uninsured motorist coverage of $15,000/$30,000.
 
 
 11
 After the accident, the Rossmans instituted this declaratory judgment suit in federal district court in the Eastern District of Virginia. Consolidated challenged the court's personal jurisdiction under the Virginia long-arm statute, Va.Code Sec. 8.01-328.1 (1987 Cum.Supp.), but the district judge found that the court had personal jurisdiction. After a bench trial on April 4, 1985, the trial court found that Consolidated and Protective were proratably liable for coverage on Kelly Richards and were required to share the cost of defending him. The Rossmans then filed for Rule 11 sanctions, alleging that Consolidated had engaged in dilatory tactics. Their motion was denied on August 23, 1985. On December 3, 1985, the estate of Paula Rossman won a judgment against Kelly in Virginia state court of $193,353.90 on the wrongful death claim. On July 24, 1986, Jodi Rossman won a judgment against Kelly, also in the state courts of Virginia, of $24,000 in compensatory damages and $10,000 in punitive damages on the personal injury claim.
 
 
 12
 Meanwhile, Consolidated attempted to appeal the declaratory judgment. On February 5, 1986, however, this court dismissed the appeal, stating that it did not have jurisdiction to consider the matter because the district court had yet to rule on the liability of State Farm and Prudential and to allocate the cost of defending Kelly. On October 16, 1986, the district court ruled on the remaining issues and held, inter alia, that State Farm was liable for the punitive damage award. On November 4, 1986, the district court amended its judgment, ordering Consolidated to reimburse Protective for fifty percent of the cost of defending Kelly in the state court actions.
 
 
 13
 The parties now appeal the various rulings of the district court.
 
 II.
 
 14
 Consolidated argues that the district court lacked personal jurisdiction over it. Consolidated states that it has no agents or offices in Virginia and conducts no business there. Consolidated also notes that its policy was written, issued, and delivered in Illinois, and that the Mazda was principally garaged in Illinois. Consolidated thus contends that its connection with Virginia was insufficient to meet the requirements of due process and of the Virginia long-arm statute.[1] We hold, however, that Consolidated's contacts with Virginia were sufficient to establish personal jurisdiction.
 
 
 15
 It is well settled that a defendant must have "minimum contacts" with the forum state before that state's exercise of personal jurisdiction satisfies the requirements of due process. International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). While there is no mechanical test of personal jurisdiction, "minimum contacts" requires that the absent defendant purposefully avail himself of the privilege of conducting business in the forum state. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). The unilateral activity of one seeking to claim some relationship with the defendant cannot satisfy the minimum contacts requirement. Id.; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985); Chung v. NANA Development Corp., 783 F.2d 1124, 1127 (4th Cir.1986). "[T]he defendant's conduct and connection with the forum State [must be] such that he should reasonably anticipate being haled into court there." World-Wide Volkswagen, 444 U.S. at 297, 100 S.Ct. at 567.
 
 
 16
 In this case, there is no doubt that Consolidated could foresee being haled into court in Virginia. "Insurance by its nature involves the assertion of claims, and resort to litigation is often necessary." August v. HBA Life Insurance Co., 734 F.2d 168, 172 (4th Cir.1984). As the district court noted, "[a] health insurance policy is typically sued upon where the insured resides, while an automobile liability policy is typically sued upon where an accident takes place." Rossman v. Consolidated Insurance Co., 595 F.Supp. 505, 509 (E.D.Va.1984). As an automobile liability insurer, Consolidated could anticipate the risk that its clients would travel in their automobiles to different states and become involved in accidents and litigation there.
 
 
 17
 Here Consolidated specifically promised to defend its policyholders from any claim or suit arising from a loss or accident within its policy territory, which included the entire United States. It is this clause that distinguishes the instant case from World-Wide Volkswagen. In that case plaintiffs, purchasers of an automobile from a New York dealer, sued the dealer after a collision in Oklahoma. The Supreme Court held that the mobility of the automobile and the distributor's ability to foresee its movement to other states were not enough to satisfy the requirements of due process. Id. at 297-98, 100 S.Ct. at 567. In World-Wide Volkswagen, nothing about the defendant's conduct indicated its willingness to be called into court in the foreign forum. Its only connection with Oklahoma was the result of the plaintiffs' unilateral act of driving the car there. By contrast, Consolidated's expectation of being haled into court in a foreign state is an express feature of its policy.
 
 
 18
 Presumably, Consolidated offers this type of broad coverage to induce customers to buy its policies and to pay higher premiums for them. The benefits thereby accruing to Consolidated are neither fortuitous nor incidental. See World-Wide Volkswagen, 444 U.S. at 298-99, 100 S.Ct. at 567-68. This type of clause, assuring policyholders that they will be covered under a broad range of circumstances in a broad range of forums, is basic to the product that Consolidated markets. If Consolidated wished to avoid suit in Virginia or any other forum, it could have excluded that state from the "policy territory" defined in the policy. Consolidated is well aware that such a limitation would make its policy less marketable.
 
 
 19
 Having found the requisite connection between Consolidated and the forum,[2] we now consider other factors to determine whether "fair play and substantial justice" favor the assertion of personal jurisdiction in Virginia. See Burger King, 471 U.S. at 476, 105 S.Ct. at 2184. The Rossmans and Kelly Richards are Virginia residents. The accident took place in Virginia. The tort claims themselves were tried in Virginia courts. It would be unfair to require plaintiffs who prevailed in those actions to sue on their judgments in Illinois. Virginia has a compelling interest in providing a forum for its residents when insurers refuse to pay a claim. "These residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant state in order to hold it legally accountable." McGee v. International Life Insurance Co., 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957). While we do not minimize the inconvenience of distant litigation for any party, Consolidated's greater resources may lessen its burden in this regard. These factors all militate in favor of the assertion of personal jurisdiction in this case.
 
 III.
 
 20
 Consolidated next argues that its obligation to indemnify Kelly ended when Kelly obtained additional insurance on the Mazda from Protective. It bases this contention on the policy's "Automatic Termination" clause, which states:
 
 
 21
 If you obtain other insurance on your covered auto, any similar insurance provided by this policy will terminate as to that auto on the effective date of the other insurance.
 
 
 22
 For the following reasons, we do not believe that the Mazda's coverage terminated when Kelly's Protective policy became effective.
 
 
 23
 Because the insurance contract between Richard and Consolidated was made in Illinois, Virginia choice of law rules dictate that the contract be interpreted according to Illinois law. See Heavner v. State Automobile Insurance Co., 350 F.Supp. 859, 862 (W.D.Va.1972). In the recent case of Dolan v. Welch, 123 Ill.App.3d 277, 78 Ill.Dec. 675, 462 N.E.2d 794 (1984), the Appellate Court of Illinois faced a situation nearly identical to that before us. That court held that a clause in a father's policy which excluded from coverage "any loss against which the named insured ha[d] other collectible insurance" did not bar coverage under the father's policy when his son obtained insurance on the vehicle. 123 Ill.App.3d at 281, 78 Ill.Dec. at 678, 462 N.E.2d at 797. The court found that the insurance company was bound by "the express terms of the policy," and held that because the son was not "the named insured" under the father's policy, his purchase of insurance did not affect coverage under the father's policy. Id. at 282, 78 Ill.Dec. 678, 462 N.E.2d at 797.
 
 
 24
 We likewise find Consolidated bound by the express terms of its policy. As the district court noted, the provision refers specifically to "you," stating that coverage will terminate if "you" obtain similar insurance. The "Definitions" section of the policy defines "you" as the "named insured," here, Richard. Since Kelly, not Richard, obtained the Protective policy, the Mazda's coverage did not automatically terminate. It was, of course, open to the insurer to draft the policy to read "if you or any family member" obtain other insurance on a covered automobile, the coverage will terminate. The insurer did not do so, however, and we must read the policy as it has been written.
 
 
 25
 Consolidated argues that interpreting "you" as referring to Richard only is unduly rigid and ignores the common sense meaning of the clause. We believe, however, that the policy designation serves important interests of the insured. The circumstances of this case attest to that. The district court found that Richard had advised his son that he needed to see any new policy before he would remove Kelly and the Mazda from the coverage of the Consolidated policy. Had Richard seen the Protective policy, its low liability limits may have concerned him. As it happened, Richard did not see the Protective policy and did not cancel the Consolidated policy before the accident. The wording of the Consolidated policy, however, protects Richard against premature termination of coverage because of other coverage which he had not seen and did not approve.
 
 
 26
 In sum, we see no reason here to depart from the maxim that insurance policies are to be reasonably read in favor of the insured. Stroehmann v. Mutual Life Insurance Co. of New York, 300 U.S. 435, 439, 57 S.Ct. 607, 609, 81 L.Ed. 732 (1937); Jefferson-Pilot Fire & Casualty Co. v. Boothe, Prichard & Dudley, 638 F.2d 670, 674 (4th Cir.1980); United States Fire Insurance Co. v. Schnackenburg, 88 Ill.2d 1, 4, 57 Ill.Dec. 840, 842, 429 N.E.2d 1203, 1205 (1981). This rule has added force with respect to exceptions and exclusions. United Service Automobile Association v. Pinkard, 356 F.2d 35, 37 (4th Cir.1966). Automatic termination provisions in particular should not be construed harshly against insureds who not only had purchased a policy but who, like Richard, were current in their premium payments. We therefore affirm the district court's finding that the Mazda's coverage did not automatically terminate when Richard's son Kelly obtained the Protective policy.
 
 IV.
 
 27
 Appellant State Farm argues that the district court erred in holding it liable on the punitive damage award. We agree with State Farm's contention.
 
 
 28
 We note preliminarily that neither company which insured the Mazda is liable for punitive damages. Protective's policy specifically excludes indemnification for punitive damages. In addition, under Florida law, which governs the Protective policy, "one may not insure against liability for punitive damages as the result of his own misconduct which gave rise to such damages." Hartford Accident and Indemnity Co. v. U.S. Concrete Pipe Co., 369 So.2d 451, 452 (Fla.Dist.Ct.App.1979). Similarly, although Consolidated's policy does not contain an express refusal to pay punitive damages, Consolidated is not liable for the punitive award. As noted earlier, the policy is governed by Illinois law, which also provides that "public policy prohibits insurance against liability for punitive damages that arise out of one's own misconduct." Beaver v. Country Mutual Insurance Co., 95 Ill.App.3d 1122, 1125, 51 Ill.Dec. 500, 503, 420 N.E.2d 1058, 1061 (1981).
 
 
 29
 The policies written by State Farm and Prudential, on the other hand, are governed by Virginia law, and Kelly Richards was not an uninsured motorist under Virginia law. Therefore, Jodi Rossman may not recover punitive damages under the uninsured motorist coverage of either policy.
 
 
 30
 The relevant portion of the Virginia uninsured motorist statute defines an "uninsured" motor vehicle as:
 
 
 31
 a motor vehicle for which (i) there is no bodily injury liability insurance and property damage liability insurance in the amounts specified by Sec. 46.1-1(8), [or] (ii) there is such insurance but the insurer writing the insurance denies coverage for any reason whatsoever, including failure or refusal of the insured to cooperate with the insurer.
 
 
 32
 Va.Code Sec. 38.2-2206(B) (1986 Repl.Vol.) Kelly Richards' car was covered for bodily injury and property damage liability in the amounts specified by statute. The car can therefore be considered an uninsured motor vehicle under Virginia law only if the insurers "denie[d] coverage" within the meaning of the statute.
 
 The Virginia Supreme Court has held that
 
 33
 An insurer denies coverage to its insured when it fails or refuses to accord him the protection it contracted to give.
 
 
 34
 State Farm Mutual v. Brower, 204 Va. 887, 134 S.E.2d 277, 280 (1964), quoted in Grossman v. Glens Falls Insurance Co., 211 Va. 195, 198, 176 S.E.2d 318, 321 (1970) (emphasis added). Because neither Consolidated nor Protective contracted to provide coverage for punitive damages, they did not, in refusing to pay the punitive damages, "deny coverage" to Kelly Richards. In Tudor v. Allstate Insurance Co., 216 Va. 918, 224 S.E.2d 156 (1976), the Virginia Supreme Court determined that the exhaustion of policy limits does not render an insured "uninsured" for purposes of the statute. Plaintiffs in that case had won judgments totalling $90,000 against one Morris, whose liability insurance policy covered a maximum liability of $30,000. Id. at 919, 224 S.E.2d at 157. The court held that Morris was not "uninsured" under the statute because the insurance company had not contracted to insure him for more than $30,000, and therefore did not deny coverage within the meaning of the uninsured motorist statute. The court wrote that:
 
 
 35
 [T]he General Assembly has decided, as a matter of public policy, to extend the benefits of uninsured motorist coverage only to those injured by a motor vehicle which is uninsured, and not to those injured by a motor vehicle which, though fully insured under the statute, is only partly insured as to claims presented.
 
 
 36
 Id. at 921, 224 S.E.2d at 159.
 
 
 37
 The purpose of the Virginia uninsured motorist statute is to "provid[e] adequate compensation for injured insureds when other sources are lacking." Grossman, 211 Va. at 197, 176 S.E.2d at 320. Because punitive damages are, by definition, not compensatory, our holding is not inconsistent with the statute's purposes. The statute is to be liberally construed to accomplish its purposes, but "we must look to the words used in the statute to determine its meaning, and only the meaning of the statute as determined should be given effect." Rose v. Travelers Indemnity Co., 209 Va. 755, 758, 167 S.E.2d 339, 342 (1969).[3]
 
 
 38
 Kelly Richards' car was fully insured under the Virginia uninsured motorist statute. The insurers of the car, in refusing to pay punitive damages, did not deny any coverage which they had contracted to supply. Because the car was not uninsured under Virginia law, State Farm and Prudential are not liable for the punitive damages.
 
 V.
 
 39
 Two matters remain for our consideration. We affirm the trial court's denial of sanctions against Consolidated under Fed.R.Civ.P. 11. In addition, we affirm the district court's ruling that Consolidated must contribute fifty percent of the costs of defending Kelly in state court.
 
 
 40
 The Rossmans moved for sanctions under Rule 11 because they believed that Consolidated had acted in bad faith during the pre-trial proceedings. Consolidated indicated in response to interrogatories that it intended to raise three arguments in the declaratory judgment action: 1) that the Mazda was never owned by Richard; 2) that Richard relinquished legal ownership of the Mazda to Kelly; and 3) that the "Automatic Termination" provision cancelled the policy. The Rossmans, at considerable expense, deposed witnesses in Illinois and Indiana on the ownership issues. On the morning of the trial, Consolidated informed the Rossmans that it intended to drop the ownership arguments and base its case on the automatic termination issue. According to the Rossmans, this was a tactic designed to deplete their resources and force them to abandon their suit. They base their allegations of bad faith primarily on the timing of the so-called tactic.
 
 
 41
 We are not persuaded that these allegations require the imposition of sanctions. The trial judge has discretion in determining whether to impose sanctions under Rule 11. Here, the district court found that Consolidated acted "reasonably under the circumstances" and refused to award attorneys' fees. See Cabell v. Petty, 810 F.2d 463, 466 (4th Cir.1987). This is the kind of matter on which deference to the district court is particularly appropriate. Everything about the arrangements for the Mazda automobile has been hotly disputed throughout this litigation; the district court did not err in declining to impose sanctions on Consolidated for vigorously pursuing these questions. Finding no abuse of discretion on the part of the trial court, we affirm the denial of the Rule 11 motion.
 
 
 42
 Finally, we address Protective's claim for contribution against Consolidated. The trial judge's ruling that Consolidated must share the cost of Kelly Richards' defense will encourage insurers in cases such as this one to err on the side of defending insureds. The trial judge also did not abuse his discretion in ordering Consolidated to pay fifty percent of the costs involved in defending Kelly in the state court suit. Neither policy placed any limit on either insurer's duty to defend. Each insurer agreed to provide a complete defense, not a defense limited by policy limits or by the presence of other insurance. See Liberty Mutual Insurance Co. v. Pacific Indemnity Co., 557 F.Supp. 986, 988 (W.D.Pa.1983) (absent limiting language, duty to defend is independent of policy's limitation on liability). Their duties to defend were coextensive, and the trial judge's division of costs was both reasonable and equitable.
 
 
 43
 For the foregoing reasons, the judgment of the district court is
 
 
 44
 AFFIRMED IN PART AND REVERSED IN PART.
 
 
 
 [1]
 The Virginia long-arm statute asserts jurisdiction to the extent due process permits. Chung v. NANA Development Corp., 783 F.2d 1124, 1127 n. 2 (4th Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 431, 93 L.Ed.2d 381 (1986). The statutory and due process analyses are thus identical
 
 
 [2]
 We do not base our holding on the fact that Consolidated expanded its connection with Virginia after the accident. The company did hire agents in Virginia to conduct an investigation of the accident and did send an employee to Virginia to attempt to effect a settlement with the Rossmans. We do not think that a party's investigation of possible legal liability after an accident creates in personam jurisdiction that would not otherwise exist. If it did, insurers would be discouraged from legitimate investigation and insureds would be deprived of its benefits
 
 
 [3]
 Where an insured with uninsured motorist coverage is, in fact, injured by an uninsured motorist, Virginia law requires his insurer to pay the amount of any punitive damages assessed against the uninsured motorist. Lipscombe v. Security Insurance Co. of Hartford, 213 Va. 81, 85, 189 S.E.2d 320, 323 (1972). The effect of our holding, therefore, is to leave plaintiffs in a less favorable position with respect to punitive damages than they would occupy if the Rossman car had been struck by an unknown or uninsured motorist. The Virginia Supreme Court has held that such an anomaly is not necessarily inconsistent with the statute's intent. See Tudor v. Allstate Ins. Co., 216 Va. 918, 921, 224 S.E.2d 156, 158-59 (1976)