**Hugh DEADWYLER, et al.,**
**Plaintiffs–Appellants,**

v.

**VOLKSWAGEN OF AMERICA,**
**INCORPORATED; Volkswagen**
**AG, Defendants–Appellees.**

**Hugh DEADWYLER, et al.,**
**Plaintiffs–Appellees,**

v.

**VOLKSWAGEN OF AMERICA,**
**INCORPORATED; Volkswagen**
**AG, Defendants–Appellants.**

**Nos. 87–2688, 88–2502.**

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 7, 1988.

Decided Sept. 5, 1989.

As Modified on Denial of Rehearing
and Rehearing In Banc Sept. 28, 1989.

---

Beverly Cooper Moore, Jr. (Sandra D. Benson, Stuart J. Logan, B. Ervin Brown, II, Moore & Brown, Winston–Salem, N.C., Charles R. Watkins, Jack L. Block, and Sachnoff, Weaver & Rubenstein, Chicago, Ill., on brief), for appellants/cross-appellees.

Daniel Vladimir Gsovski (Herzfeld & Rubin, P.C., New York City, Bynum M. Hunter, Catherine C. Eagles, Smith, Helms, Mulliss & Moore, Greensboro, N.C., William F. Womble, Jr., Robert C. Dortch, and Womble, Carlyle, Sandridge & Rice, Charlotte, N.C., on brief), for appellees/cross-appellants.

Before ERVIN, Chief Judge, and RUSSELL, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

ERVIN, Chief Judge:

Plaintiffs brought this breach of implied warranty action against Volkswagen of America, Inc., and Volkswagenwerk, AG (collectively "Volkswagen"). Having failed to convince the jury of their claim that certain engine components installed in their Volkswagen Rabbits were defective, plaintiffs now appeal from the district court's refusal to grant them a new trial. Volkswagen cross appeals from the district court's summary refusal to consider an award of attorney's fees for Volkswagen. For the reasons stated below, we are not persuaded by plaintiffs' assertions of error and accordingly affirm the judgment for Volkswagen. We remand, however, with

instructions to the district court to hear Volkswagen's requests for attorneys' fees or sanctions.

## I.

Plaintiffs brought this nationwide class action under the Magnuson–Moss Warranty Act of 1975, 15 U.S.C. §§ 2301–2312, alleging breach of the implied warranty of merchantability defined by UCC § 2–314(2)(c). Plaintiffs claim that Volkswagen installed defective valve stem seals in the engines of gasoline powered Volkswagen Rabbits for model years 1976 to 1979. These valve stem seals, made of polyacrylic rubber, are supposed to prevent oil from leaking into the engine's combustion chamber. Plaintiff's amended complaint specifically alleged that "due to the interaction of their inferior polyacrylic elastomer material with the relatively high heat conditions uniformly generated by the Rabbit engines, the seals tended to gradually and prematurely harden, crack, and deteriorate, typically at mileages of 20,000 to 40,000." Plaintiffs sought to recover monetary losses due to excessive oil consumption, engine "seizures" and the diminished resale value of their Rabbits. Plaintiffs also sought recovery under various pendent state law unfair trade practice claims on the grounds that Volkswagen knew the valve stem seals were defective but concealed this knowledge from purchasers.

In February of 1987, the district court issued a Revised Class Action Order certifying, with exceptions not relevant here, three classes of plaintiffs: (1) 1976 to 1979 model Rabbit owners who incurred unreimbursed expenses for excessive oil consumption or engine failure between 10,000 and 80,000 miles; (2) persons who purchased 1976 to 1979 model Rabbits new or second hand prior to October 1979 and who sold their vehicles within six years of the vehicle's original retail purchase; and (3) Rabbit owners with pendent state law deceptive or unfair trade practice claims. After more than two years of discovery and motions practice, the case went to trial on June 1, 1987.

On June 18, the jury retired to consider the evidence and to make findings on the nine issues submitted by way of special verdict interrogatories. (The text of those interrogatories is attached as Appendix A.) The first interrogatory ("Issue # 1") asked, "Were the polyacrylate valve stem seals installed by defendants in the 1976–1979 gasoline Rabbit automobiles defectively designed?" The other interrogatories were phrased such that if this first question was answered negatively the jury was not to consider the remaining issues. On June 19, the jury returned the special verdict having answered the first question negatively and judgment was subsequently entered for Volkswagen.

## II.

### A.

Plaintiffs vigorously challenge the form and content of the special verdict interrogatories submitted to the jury. The special verdict required the jury to find that the polyacrylic seals were defectively designed before the jurors could proceed to consider other issues. Thus, as plaintiffs recognize, an affirmative finding on Issue 1 was a necessary condition precedent to an affirmative finding on any of the remaining issues. Plaintiffs assert that this requirement was erroneous because it effectively required them to prove a specific design defect as an element of their claim that the Rabbit's excessive oil consumption amounted to a breach of the UCC's implied warranty of merchantability. Plaintiffs argue that a successful claimant under UCC § 2–314(2)(c) and its various and sundry state law enactments need not allege or ultimately prove a specific design defect but need only prove that the goods sold were not fit for their ordinary purpose. Plaintiffs conclude that they are entitled to a new trial because the special verdict impermissibly imposed upon their claim an element not imposed by the UCC.

Plaintiffs also argue that the special verdict similarly misapplied the legal requirements governing their pendent state law claims. These various "Little FTC Act"

unfair trade practice claims were premised on the allegation that Volkswagen knew that the valve stem seals were defective, or likely to be defective, and that Volkswagen concealed this knowledge from purchasers. Plaintiffs contend that applicable state law does not require claimants to show a specific defect in order to prove that Volkswagen engaged in unfair or deceptive trade practices. Thus, plaintiffs conclude that the special verdict erroneously tied success on their unfair trade practice claims to a finding that the valve stem seals were defective.

Special verdicts are authorized by Rule 49 of the Federal Rules of Civil Procedure. As this court has previously noted, both the initial decision to use a special verdict and the formulation of issues submitted are matters "resting in the sound discretion of the trial judge." *Tights, Inc. v. Acme–McCrary Corp.*, 541 F.2d 1047, 1060 (4th Cir.1976), *cert. denied*, 429 U.S. 980, 97 S.Ct. 493, 50 L.Ed.2d 589 (1976). "It follows then, that our review of the form of the trial court's special interrogatories is confined to whether their use in that form was an abuse of discretion." *Id.* A district court abuses its discretion by, among other things, "misapprehending the law with respect to underlying issues in litigation." *Quince Orchard Valley Citizens Association, Inc. v. Hodel*, 872 F.2d 75, 78 (4th Cir.1989), *quoting Goldie's Bookstore v. Super. Ct. of State of California*, 739 F.2d 466, 470 (9th Cir.1984). It follows that the trial court abused its discretion if the special verdict interrogatories did indeed impose upon plaintiffs' claims an element of proof not otherwise required by law.

■ We find it unnecessary, however, to reach the question of whether or not plaintiffs in a breach of implied warranty class action need prove the existence of a specific defect common to all members of the class. We also find it unnecessary to determine whether the special verdict impermissibly tied plaintiffs' unfair trade practice claims to the design defect issue in their breach of warranty claims. Instead, we find that plaintiffs failed to adequately object to the submission of Issue 1, the interrogatory in dispute here. "[A] party who fails to object to the form of special interrogatories cannot complain for the first time on appeal." *J.C. Motor Lines, Inc. v. Trailways Bus System*, 689 F.2d 599, 603 (5th Cir.1982). *See also Martin v. United Fruit Company*, 272 F.2d 347 (2d Cir.1959).

Issue 1 was tentatively adopted, with only minor revisions, from the "Proposed Jury Issues" submitted by plaintiffs at the pre-trial conference. Indeed, the district court eventually adopted the substance and structure of all the plaintiffs' proposals except those relating to punitive damages. Plaintiffs nevertheless claim to have later objected to their own proposal when, five days into the trial and long after the court's initial deadline, they submitted a paper entitled "Proposed Jury Instructions." These proposed instructions did restructure and rephrase several of plaintiffs' previously proposed jury issues.[1] Plaintiffs' counsel did not, however, voice a single specific objection during the colloquy regarding the "Proposed Jury Instructions." If plaintiffs' "Proposed Jury Instructions" were intended as a formal objection to the district court's then tentative adoption of plaintiffs' "Proposed Jury Issues," that intention was not made clear to the judge as required by Rule 51 of the Federal Rules of Civil Procedure.

Plaintiffs' failure to make a clear objection to Issue 1 is further confirmed by their silence at the charging conference. After discussing several objections raised by Volkswagen, the court stated, "Gentlemen, I have rewritten these [interrogatories] several times and given you all copies of them. If anybody else has any comment about them, I want them in the next 20

---

1. We note as significant the fact that the third interrogatory contained in plaintiffs' "Proposed Jury Instructions," required the jury to determine whether the valve stem seals were defective. Thus, even if the court had adopted plaintiffs' second set of proposed jury issues rather than their first set, plaintiffs would still have been required to prove that the valve stem seals were defective in order to recover on their claim for breach of implied warranty.

minutes so I can run a final print." Plaintiffs did not avail themselves of this opportunity to object to the interrogatories. Nor did they voice an objection to Issue 1 when, after instructing the jury, the court asked, "Are there any errors or omissions that the plaintiffs wish to call to the attention of the court?" On this record, we are compelled to conclude that plaintiffs did not adequately object at trial to the special verdict interrogatory challenged here and we therefore decline to review the merits of that challenge.

### B.

■ Plaintiffs did, however, clearly object to the judge's supplemental jury instructions regarding the definition of a design defect. During the first day of their deliberation, the jury returned to open court and asked for a "little clearer definition of design in issue number one." One juror stated, "I think what we are needing clarification on is whether it is the design or the application." Plaintiffs contend that the trial court's response to this question only confused the jury because the judge explained the notion of a design defect in the abstract rather than in the context of the Rabbit engine.

Even if it would have been error for the trial court to discuss the issue of design defect in abstract terms, we must reject plaintiffs' argument. There is simply no support for plaintiffs' characterization of the judge's explanation. The judge clearly instructed the jury to consider the question of defective design in the context of the purpose the seals were supposed to serve. He stated at one point "well, its essentially the design, of course, the design embraces the application. Design for a particular use." With the luxury of time to consider

all of the possible explanations which the trial court could have given we might be able to formulate a clearer answer to the jury's query. Given the time constraints within which trial courts must respond to impromptu requests for clarification, the judge's necessarily extemporaneous explanation was sufficiently clear and legally adequate to make plain the jury's task under the special verdict.

### C.

■ The special verdict, as it stands, allows us to quickly resolve plaintiffs' remaining challenge. At trial, plaintiffs sought to introduce statistical evidence regarding the average diminished resale value of 1976–1979 Rabbits. This evidence was of course relevant to the issue of damages under plaintiffs' breach of warranty claims. The trial court disallowed this proffered testimony because it believed that significant regional variations in resale market prices made it inappropriate for the jury to hear evidence on the issue of class-wide average resale damages. While plaintiffs' expert was not allowed to testify in terms of dollar amounts, he was allowed to testify in general terms that Rabbits had suffered a statistically significant decrease in resale value. Plaintiffs contend that this ruling amounted to reversible error.

In light of the jury's finding on the defect issue, any error in excluding this testimony was clearly harmless and would not justify granting a new trial.[2] Since the jury answered Issue 1 negatively, and accordingly found that Volkswagen was not liable, it obviously did not reach the issue of damages. Plaintiffs were thus in no way prejudiced by the exclusion of the proffered expert testimony on damages.

2. This circuit recently ruled that the Magnuson–Moss Warranty Act will not support an implied breach of warranty action against an automobile manufacturer premised upon claims of diminished resale value in the absence of allegations that the plaintiff's vehicle actually suffered from whatever defect produced the drop in resale market value. In *Carlson v. General Motors Corp.,* 883 F.2d 287 (4th Cir.1989), a panel of this court upheld the dismissal of actions by plaintiff class members who alleged damages based solely on the diminished resale value of their diesel equipped General Motors cars. The court reasoned that the concept of "merchantability" in UCC § 2–314 "does not encompass consumer expectations that a product will hold its value." At 298. This precedent would clearly require affirmance of the evidentiary ruling here contested but for the fact that many of the plaintiffs who alleged damages due to the diminished resale value of their Rabbits also allegedly suffered from excessive oil consumption and oil system failures.

Evidentiary errors regarding damages are harmless where special verdict questions regarding liability are determined in a defendant's favor. *See Brown, Federal Special Verdicts: The Doubt Eliminator,* 44 F.R.D. 338, 346–48 (1968), *accord Wright & Miller, Federal Practice & Procedure* § 2505.

### III.

Finally, we turn to Volkswagen's argument on cross appeal. After the jury returned the special verdict, Volkswagen, at the trial court's invitation, submitted a proposed judgment order. Paragraph 5 of that proposal allowed the defendants forty-five days after the entry of the final judgment to file an application for costs or attorneys' fees. The court's final judgment order awarded costs to Volkswagen but made no provision for considering requests for fees or sanctions. When this fact was brought to the judge's attention, he responded, "you can save your breath on attorney fees. I'm not going to award attorney fees." Consequently no motion for attorneys' fees or sanctions was ever filed.

The decision to impose sanctions or award attorneys' fees generally lies within the district court's sound discretion. *Rossman v. State Farm Mut. Auto Ins. Co.,* 832 F.2d 282 (4th Cir.1987). We agree with Volkswagen that in this case the trial court abused its discretion by arbitrarily foreclosing any consideration of Volkswagen's request. District courts need not hold hearings or make findings before denying trivial or groundless motions for sanctions where the reasons for the denial are readily apparent on the record. *See Local 232, Allied Indus. Wkrs. v. Briggs & Stratton,* 837 F.2d 782 (7th Cir.1988). But a motion for fees or sanctions cannot be deemed trivial before it is even presented. We agree with the Fifth Circuit that "[a]t a minimum, the district court must listen to a party's arguments and give reasons for its decision." *Schwarz v. Folloder,* 767 F.2d 125, 127 (5th Cir.1985). *Cf. Lavay Corp. v. Dominion Federal Sav. & Loan Ass'n,* 830 F.2d 522 (4th Cir.1987) (district court's dismissal of defendant's motion for sanctions before plaintiffs responded was re-versed as premature), *cert. denied,* —— U.S. ——, 108 S.Ct. 1027, 98 L.Ed.2d 991.

### IV.

Accordingly, we affirm the judgment below but remand with instructions to consider such motions for attorneys' fees or sanctions as either party wishes to file. Further, because we think the trial court's comments regarding attorneys' fees creates at least the appearance that he has prejudged the merits of the issue, we order that this matter be assigned to a different judge on remand.

**AFFIRMED IN PART AND REMANDED WITH INSTRUCTIONS.**

### APPENDIX

1. Were the polyacrylate valve stem seals installed by defendants in the 1976–1979 gasoline Rabbit automobiles defectively designed?

ANSWER; NO

2. If issue one is answered "Yes," did the polyacrylate valve stems render the 1976–1979 gasoline Rabbit automobiles in which they were installed unfit for their ordinary purposes?

ANSWER: ————

3. If issues one and two are answered "Yes," did 1976–1979 gasoline Rabbit automobiles suffer diminished resale value after October, 1979, because of the defects?

ANSWER: ————

4. If issues one and two are answered "Yes," did the 1976 to 1979 gasoline Rabbit automobiles with polyacrylate valve stem seals consume excessive oil, in relation to comparable automobiles?

ANSWER: ————

5. If issues one and two are answered "Yes," did defendants know when they sold the gasoline Rabbits that they were unfit for their ordinary purposes, and did they fail to disclose the fact to the purchasers:

(a) Of 1976 models? ANSWER: ————

(b) Of 1977 models? ANSWER: ————

(c) Of 1978 models? ANSWER: ————

(d) Of 1979 models? ANSWER: ————

6. If issues one and two are answered "Yes," did defendants actively and fraudulently conceal the defective design of the valve stem seals from purchasers of the Rabbit automobiles?

ANSWER: _____

7. If issues one and two are answered "Yes," was there any widely available information from which the members of plaintiffs' class should have learned of the defectively designed valve stem seals in the gasoline Rabbit automobiles prior to:

(a) February 21, 1979?   ANSWER: _____

(b) February 21, 1980?   ANSWER: _____

(c) February 21, 1981?   ANSWER: _____

8. If issues one and two are answered "Yes," did defendants know when they sold the gasoline Rabbits that the defects in the valve stem seals were not likely to be manifested within the twelve months or 20,000–mile limit of defendants' limited Warranty?

ANSWER: _____

9. If issues one and two are answered "Yes," did defendants act in reckless disregard of the rights of plaintiffs and their class?

ANSWER: _____