# Richmond

ELMER S. TUDOR, ET AL. V. ALLSTATE INSURANCE COMPANY, ET AL.

April 23, 1976.

Record No. 750606.

Present, All the Justices.

*Douglas K. Frith; Philip G. Gardner (Frith, Gardner & Gardner,* on briefs), for plaintiffs in error.

*Frank O. Meade; William R. Rakes (Meade, Tate, Meade & Daniel; Gentry, Locke, Rakes & Moore,* on briefs), for defendants in error.

POFF, J., delivered the opinion of the court.

On May 3, 1973, Elmer S. Tudor and Bessie Marie Harmon (appellants), passengers in an automobile owned and operated by Kenneth M. Jessup, were injured in a collision with a vehicle owned by Opal Morris and driven by Walter N. Morris outside its lawful lane of travel.

Nationwide Mutual Insurance Company (Nationwide), the liability insurer of the Morris vehicle, provided coverage of $20,000 for one person and $30,000 for all persons on account of injuries growing out of a single accident. Allstate Insurance Company and Lumbermens Mutual Casualty Company (collectively, appellees), provided uninsured motorist coverage to all occupants of the Jessup vehicle and to Elmer S. Tudor, respectively.

After Nationwide had paid its maximum liability of $30,000 to the five persons injured in the accident (including Tudor, who received $2,383.57, and Harmon, who received $2,037.55), appellants filed motions for judgment against the administrator of the estate of Walter N. Morris who was killed in the accident. Nationwide defended these actions for the estate; appellees were served as uninsured motorist carriers. Tudor and Harmon obtained judgments for $30,000 and $60,000, respectively, against Morris' estate. Executions on the judgments were returned "no effects", and appellants demanded payment by Nationwide. Upon Nationwide's refusal to pay any sum in excess of its maximum contract liability, appellants commenced declaratory judgment actions asking the court to declare appellees liable as uninsured motorist carriers. By final orders entered January 15, 1975, the trial court sustained appellees' demurrers.

The cases, consolidated for appeal, raise the question whether the Morris vehicle was, as to appellants, an "uninsured motor vehicle" within the meaning of Code § 38.1-381(c) (Repl. Vol. 1970).

Code § 38.1-381 (b) (Repl. Vol. 1970), provides, *inter alia*, that no liability insurance policy be issued "unless it contains an endorsement or provisions undertaking to pay the insured all sums which he shall be legally entitled to recover as damages from the owner or operator of an uninsured motor vehicle, within limits which shall be no less than the requirements of § 46.1-1 (8), as amended from time to time. . . ." At the time of this accident, Code § 46.1-1(8) (Repl. Vol. 1972) required coverage of $20,000 on a single claim and $30,000 on all claims for bodily injury or death.

Insofar as relevant to this appeal, the term "uninsured motor vehicle" is defined in Code § 38.1-381(c) as:

"a motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1-1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder for any reason whatsoever including failure or refusal of the insured to cooperate with such company. . . ."

Appellants urge that we construe the statutory definition of "uninsured motor vehicle" to include "a motor vehicle covered by a company which denies payment of a personal injury judgment because

its applicable limits (which limits meet § 46.1-1(8)) of coverage are exhausted by payments to various claimants." They say that:

> "There is no contention that all judgments must be paid in full, but it is contended that when $20,000 becomes unavailable to the individual, *for whatever reason*, then the individual is entitled to reach uninsured coverage just the same as if the defendant's insurance company became insolvent, or it denied coverage for failure of the insured to cooperate, or if he had no coverage at all, or if the coverage provided $1.00 liability coverage or $19,999.99 liability coverage."

Appellants rely upon the *ratio decidendi* of our opinion in *Grossman* v. *Glens Falls Ins. Co.*, 211 Va. 195, 176 S.E.2d 318 (1970). There, the tortfeasor had a liability policy with coverage meeting statutory requirements. After the injured claimant had recovered judgment, the insurer became insolvent and failed to pay its contract commitment. Construing the phrase "denies coverage", we held that the insurer, by reason of insolvency, "has thereby denied, withheld and refused payment, and has failed to accord its insured protection and coverage." 211 Va. at 199, 176 S.E.2d at 321.

Appellants' reliance is misplaced. Here, as in *Grossman*, the tortfeasor had a liability policy with coverage meeting statutory requirements, and after the injured claimants had recovered judgments, the insurer refused to pay. Its refusal, however, was not based upon an inability or unwillingness to pay an obligation it had contracted to pay but upon an absence of a contract obligation. Thus, it has not, as in *Grossman*, "failed to accord its insured protection and coverage" but rather has acknowledged the coverage it contracted to give and has fully discharged its obligations under that contract. As we said in *State Farm* v. *Brower*, 204 Va. 887, 891, 134 S.E.2d 277, 280 (1964), "[a]n insurer denies the coverage to its insured when it fails or refuses to accord him the protection it contracted to give."

On brief, appellants cited three cases from sister jurisdictions supporting their view. At the time of oral argument, two had been reversed. The third, *Porter* v. *Empire Fire & Marine Ins. Co.* 106 Ariz. 274, 475 P.2d 258 (1970), has been rejected by courts in other states. *Golphin* v. *Home Indemnity Company*, 284 So.2d 442 (Fla. App. 1973); *Brake* v. *MFA Mutual Insurance Company*, 525 S.W.2d 109 (Mo. App. 1975); *Kemp* v. *Fidelity & Casualty Company*, 504 S.W. 2d 633 (Tex. Civ. App. 1973), *aff'd*, 512 S.W.2d 688 (Tex. 1974).

The Arizona statute construed in *Porter*, unlike that in Virginia, contains no specific definition of "uninsured motor vehicle" and does not make uninsured motorist coverage mandatory. We find *Porter* inapposite.

While we have consistently held that the uninsured motorist statutes are remedial in nature and are to be construed liberally in favor of insurance protection for qualified claimants, we cannot disregard the plain import of the words and phrases chosen by the General Assembly, and we hold that the Morris vehicle was not an "uninsured motor vehicle" within the meaning of Code § 38.1-381 (c). We believe that our holding represents the majority view among jurisdictions construing statutes similar to ours. *See, e.g., Wilbourn* v. *Allstate Insurance Company*, 293 Ala. 466, 305 So.2d 372 (1974); *Simonette* v. *Great American Insurance Company*, 165 Conn. 466, 338 A.2d 453 (1973); *Golphin* v. *Home Indemnity Company, supra; Smiley* v. *Toney*, 44 Ill.2d 127, 254 N.E.2d 440 (1970); *Detrick* v. *Aetna Casualty and Surety Company*, 261 Iowa 1246, 158 N.W.2d 99 (1968); *Curry* v. *Travelers Insurance Company*, 301 So.2d 757 (La. App. 1974), *cert. denied*, 304 So.2d 671 (1974); *McMinn* v. *New Hampshire Insurance Company*, 276 So.2d 682 (Miss. 1973); *Brake* v. *MFA Mutual Insurance Company, supra; Simmons* v. *Hartford Accident & Indemnity Company*, 543 P.2d 1384 (Okla. 1975); *Lund* v. *Mission Insurance Company*, 528 P.2d 78 (Ore. 1974); *Kemp* v. *Fidelity & Casualty Co. of New York, supra; Scherr* v. *Drobac*, 53 Wis.2d 308, 193 N.W.2d 14 (1972).

It is true, as appellants say, that our holding leaves them in a position less favorable than they would occupy if the tortfeasor in this case had been unknown or uninsured. However anomalous this may appear, the General Assembly has decided, as a matter of public policy, to extend the benefits of uninsured motorist coverage only to those injured by a motor vehicle which is uninsured, and not to those injured by a motor vehicle which, though fully insured under the statute, is only partly insured as to claims presented. Were we to embrace the view urged by appellants, we would effectively defeat the statutory design of bodily injury limits which insurers are permitted to impose under Code § 38.1-381(c).

We hold that the demurrers were properly sustained, and the orders are

*Affirmed.*