**Wintford C. BILLINGS, Plaintiff,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant.**

**Civ. A. No. 87–578–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Feb. 25, 1988.

prospective advantage. *Smith v. Holt, Rinehart & Winston, Inc.,* 270 S.C. 446, 242 S.E.2d 548 (1978).

## AMENDED ORDER

CLARKE, District Judge.

This case comes before the Court on Motions by both parties for summary judgment. Plaintiff seeks to "stack" underinsurance coverages for three vehicles insured under a single policy issued by defendant. The parties have submitted motions and supporting memoranda and this Court has heard oral argument. Therefore, this matter is ripe for disposition.

Plaintiff, Wintford C. Billings, sustained significant injuries when his car was hit by an automobile driven negligently by Clarence Oliver. Mr. Oliver was covered by his own insurance policy, issued by Erie Insurance Group, with bodily injury liability limits of $25,000 per person and $50,000 per accident. Plaintiff was insured by defendant, State Farm, under one policy covering three vehicles including the one in which plaintiff was a passenger at the time of the accident. Plaintiff's policy included uninsured motorist coverage, applicable to each of the three vehicles, in the amounts of $50,000 per person and $100,000 per accident. Both parties agree that Mr. Oliver's vehicle is underinsured in that the bodily injury insurance coverage applicable to his vehicle is less than the uninsured motorist coverage afforded plaintiff. *See* Va. Code Ann. § 38.1–381 (currently codified as § 38.2–2206).

The primary issue in this case is whether plaintiff can stack or combine the three uninsured bodily injury limits on his three vehicles to obtain a total coverage of $150,000, less the coverage available from Mr. Oliver's policy. Plaintiff asserts that although his three vehicles were all included on a single policy, he was billed separately for each of the uninsured motorist coverages and thus is entitled to "stack" three bodily injury limits. Plaintiff relies on the definition of "underinsured" contained in the applicable Virginia Code section. Defendant contends that the clear and unambiguous language of the policy prohibits such stacking and thus, under Virginia case law, plaintiff is entitled only to underinsurance coverage based on the uninsured coverage applicable to the vehicle plaintiff

Wayne Lustig, T. Scott Carnes, Richard N. Shaprio, Guy, Cromwell, Betz & Lustig, P.C., Virginia Beach, Va., for plaintiff.

John G. Crandley, Preston, Wilson & Crandley, Virginia Beach, Va., for defendant.

occupied at the time of the accident. A subsidiary issue is the amount of liability coverage considered available to plaintiff under Mr. Oliver's policy and thus to be subtracted from the coverage provided by State Farm.

This Court has diversity jurisdiction over the present action pursuant to 28 U.S.C. § 1332. Virginia law is applicable in this case. The parties agree that the applicable statute is Virginia Code § 38.1–381 as it was the statute in effect at the time of the accident. The relevant portion of the statute reads as follows:

> A motor vehicle is underinsured when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of such vehicle . . . is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of such vehicle.

Va. Code Ann. § 38.1–381(c) (currently codified as § 38.2–2206(B)).

Plaintiff argues that in construing the above statute, the word "total" is significant and is used to indicate that an injured party is entitled to look to more than one coverage in the context of underinsurance protection. Although no published Virginia Supreme Court cases have interpreted the statute, plaintiff points to two Virginia lower court cases as standing for the proposition that underinsurance coverages can be combined in situations analogous to the instant case. However, these cases are not sufficiently similar to the case at bar to govern the outcome here.

The first case cited by plaintiff, *Herbecq v. Virginia Farm Bureau Ins. Co.*, (June 17, 1987, Spotsylvania County Circuit Court) involves a plaintiff, Herbecq, who had an accident while driving her stepdaughter's vehicle. The vehicle had uninsured motorists coverage of $25,000 per person. Additionally, Herbecq was a member of her daughter's household and her daughter owned a vehicle with uninsured motorist coverage of $25,000 per person. The court stated that the limits of both policies must be considered in determining the total amount of uninsured motorist coverage available to Herbecq for underinsurance purposes.

In the second case relied on by plaintiff, *Integrity Ins. Co. v. Turnage*, (April 11, 1986, Henrico County Circuit Court), Turnage, the injured plaintiff, was driving a rental car at the time of her accident. The rental car had $25,000 of uninsured motorist insurance per person and the plaintiff's personal vehicle also had $25,000 of uninsured motorist insurance per person. The court held that both coverages were available to the plaintiff for purposes of determining her underinsurance status. Judge Spinella reasoned that because the statute talked about the "total amount of uninsured motorist coverage" the plaintiff was not restricted to the coverage on any one vehicle. See discussion of *Turnage* in *Virginia Trial Lawyers Association Law Letter and Journal*, March 1987.

The *Herbecq* and *Turnage* cases differ significantly from the instant case in that they deal with combining coverages provided in completely different policies and from different sources, while the case at bar involves coverages on three vehicles covered by a single policy which contains limiting language. Thus, the interpretation of the underinsurance statute evidenced in *Herbecq* and *Turnage* is not necessarily applicable to the facts of the instant case.

However, Virginia case law provides persuasive guidance on whether plaintiff can stack the underinsurance coverage for each of his three vehicles. A number of Virginia cases have dealt with the issue of combining uninsured motorist coverages. In two 1972 cases, the Virginia Supreme Court established the principle that stacking of uninsured motorist coverages is permissible absent clear and unambiguous policy language to the contrary. *See Cunningham v. Ins. Co. of North America*, 213 Va. 72, 189 S.E.2d 832 (1972); *Lipscombe v. Security Ins.*, 213 Va. 81, 189 S.E.2d 320 (1972). *See also, Sturdy v. Allied Mut. Ins. Co.*, 203 Kan. 783, 457 P.2d 34 (1969). In both *Cunningham* and *Lipscombe*, the court held that uninsured motorist coverage in a multi-vehicle policy

was increased according to the number of vehicles insured. However, the court also adopted the *Sturdy* rationale which allows plain and unmistakable language in a policy to prevent stacking. *Cunningham*, 213 Va. at 79, 189 S.E.2d at 836–37; *Lipscombe*, 213 Va. at 84, 189 S.E.2d at 323.

These basic principles were reaffirmed by the court in a 1981 case, *Goodville Mut. Casualty Co. v. Borror*, 221 Va. 967, 275 S.E.2d 625 (1981). *Goodville* involved a declaratory judgment motion to determine whether the uninsured motorist coverages on two vehicles insured in a single policy could be stacked to provide two times the minimum coverage for a single accident. In *Goodville*, Mr. Borror was driving his employer's uninsured pickup truck when he was struck and killed by the vehicle operated by Mr. Rector, also apparently uninsured. Mr. Borror was the named insured on a policy issued by Goodville which covered two of his automobiles. Mr. Borror had been charged separate premiums for the liability coverage on each of his automobiles but a separate premium was not allocated for uninsured motorist coverage. *Goodville*, 221 Va. at 968, 275 S.E.2d at 626. Mr. Borror's widow sought to stack the two $25,000 uninsured motorist coverages contained in the Goodville policy in order to satisfy any judgment she received from a wrongful death suit she had filed in connection with her husband's death.

The Virginia Supreme Court restated the rule in Virginia that "stacking of [uninsured motorist] coverage will be permitted unless clear and unambiguous language exists on the face of the policy to prevent such multiple coverage." 221 Va. at 970, 275 S.E.2d at 627. The court went on to examine the specific language contained in the Goodville policy. Under the Uninsured Motorist section, the policy included the following language, quoted by the court in its opinion:

III. LIMITS OF LIABILITY

Regardless of the number of … motor vehicles to which this insurance applies, (a) the limit of liability for bodily injury stated in the schedule as applicable to "each person" is the limit of the compa-

ny's liability for all damages because of bodily injury sustained by one person as the result of any one accident and, subject to the above provision respecting "each person", the limit of liability stated in the schedule as applicable to "each accident" is the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one accident. *Id.* at 970, 275 S.E.2d at 627. The court noted that this language had been held not to be ambiguous in some jurisdictions and ambiguous in others. However, the Virginia Supreme Court, in agreeing with the former interpretation, stated the following:

We conclude that the language of Goodville's policy,' *viz.*, "[r]egardless of the number of … motor vehicles to which this insurance applies," is clear and unambiguous and requires the construction that stacking is not permissible. With the foregoing language, the policy plainly limits Goodville's UM liability for damages to any one person as a result of any one accident to $25,000. The mere fact that two vehicles are insured and two separate premiums are charged is of no consequence in light of the express language of the policy.

*Id.* at 971, 275 S.E.2d at 628.

Defendant contends that *Goodville* is controlling in the instant case. Indeed, the language contained in plaintiff's State Farm policy is strikingly similar to the policy language in *Goodville*. The State Farm policy reads:

III. LIMITS OF LIABILITY

Regardless of the number of … motor vehicles to which this insurance applies, (a) If the schedule or declarations indicate split limits of liability, the limit of liability for bodily injury stated as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one accident. …

Defendant's Exhibit A at 17. According to *Goodville*, the above language is not ambiguous and would, absent other mitigating

factors, prevent stacking in the instant case.

Plaintiff, however, argues that *Goodville* is not controlling. First, plaintiff alleges that the policy language is ambiguous and thus should be construed against the draftsman, State Farm. Plaintiff bases this argument on the fact that the language regarding multiple vehicles is not contained in the appropriate policy section and is not made applicable to underinsurance provisions of the State Farm policy. The *Goodville* case dealt with *uninsured* coverage and the portion of the policy quoted above appeared under the heading "PROTECTION AGAINST UNINSURED MOTORISTS INSURANCE". In the instant case, the quoted policy language is contained in the section entitled "UNINSURED MOTORISTS INSURANCE". Plaintiff argues that because no such limiting language appears in the policy section which specifically addresses underinsurance coverage, stacking is permissible in the context of underinsurance. Thus, plaintiff reasons, the policy is ambiguous with respect to the issue of combining coverages for underinsurance purposes and should be construed against the insurer to allow stacking.

Defendant argues that the policy language unambiguously prohibits stacking for underinsurance purposes. Indeed, a logical interpretation of the policy supports defendant's argument. The portion of the State Farm policy which addresses underinsured motorist coverage specifically is entitled "SUPPLEMENTARY UNINSURED MOTORISTS INSURANCE, (Bodily Injury—Property Damage—Limits—*Underinsured* Motorists), (Virginia)." Defendant's Exhibit A at 16 (emphasis added). Clearly the use of the word "SUPPLEMENTARY" in the section title indicates that this particular section is not meant to stand on its own but rather is to be read in conjunction with another policy section. Thus, the reader is referred to the section entitled "UNINSURED MOTORISTS INSURANCE" which contains the language limiting combining of coverages and previously interpreted by the Virginia Supreme Court. Additionally, plaintiff conceded at oral ar-

gument that the amount of underinsurance coverage applicable in a particular situation is determined by referring to the uninsured motorists provisions of the applicable policy. Thus, the limiting language contained in the State Farm policy section dealing with Uninsured Motorists Insurance is fully applicable to the underinsurance provisions of that policy.

Plaintiff also argues that *Mitchell v. State Farm Mut. Automobile Ins.*, 227 Va. 452, 318 S.E.2d 288 (1984) supports allowing stacking in the instant case. In *Mitchell* the court looked at the question of whether the plaintiff could stack the coverage provided by three separate policies issued to her husband for underinsurance purposes. Each of the policies contained the following language in the section which dealt with underinsured motorists: "[T]he limits so stated ... shall be the total limit of the company's liability for all damages because of bodily injury as the result of any one accident...." *Id.* at 453–54, 318 S.E.2d at 289. The Virginia Supreme Court held that the language of the policy was clear and unambiguous and thus stacking of the three policies would not be permitted. The court also indicated that the result might have been different had there been a statutory definition of "underinsured motor vehicle". Without a superseding statute the policy language controls, but the court discussed a number of instances where stacking was allowed pursuant to an underinsurance statute. *Id.* at 457–58, 318 S.E.2d at 291. Accordingly, plaintiff argues that the underinsurance provisions of the Virginia Code, enacted in 1982, would warrant a different outcome in the instant case and therefore the result in *Mitchell* is not determinative of the instant action. Plaintiff also stresses the factual difference between the two cases in that *Mitchell* involved three separate policies but the instant case deals with three coverages contained within a single policy.

■ This brings us to the interpretation of Virginia Code § 38.1–381, which is applicable to the instant case. The statute reads in part:

A motor vehicle is underinsured when, and to the extent that, the total amount of ... coverage ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of such vehicle.

Va. Code § 38.1–381(c). Plaintiff contends that the word "total" acts to allow stacking of uninsured motorists coverages contained in a single policy, despite policy language to the contrary. This Court, however, is not persuaded by plaintiff's argument. Nothing in the wording of the statute, which was enacted in 1982, indicates that the legislature intended to overrule the line of Virginia cases, including *Goodville* and *Mitchell,* which supports defendant's argument against stacking in the instant case. It is more likely that the word "total" refers to combining coverages from different sources or policies, as exemplified by the *Herbecq* and *Turnage* cases discussed above. Accordingly, this Court finds that the clear and unambiguous policy language prohibiting stacking is controlling and plaintiff will not be permitted to stack the three uninsured motorist coverages contained in his State Farm policy.

█ A subsidiary issue in the instant case involves a determination of the amount of liability coverage applicable to the operation of Mr. Oliver's vehicle under Virginia Code § 38.1–381(c). Plaintiff argues that although Mr. Oliver's coverage was for $25,000, since another party injured in the same accident received $2,250, the available underlying coverage remaining is only $22,750. Under this reasoning, $22,750 would be subtracted from the uninsured coverage available to plaintiff to determine the actual amount for which State Farm, plaintiff's insurer, could be held liable. Defendant, on the other hand, argues that the full $25,000 of Mr. Oliver's liability coverage should be subtracted since that is the amount of liability coverage applicable to Mr. Oliver's motor vehicle at the time of the accident.

In the case of *Tudor v. Allstate Ins. Co.,* the Supreme Court of Virginia addressed a similar issue and interpreted portions of Section 38.1–381 of the Virginia Code. 216

Va. 918, 224 S.E.2d 156 (1976). In *Tudor,* Nationwide Insurance was the liability insurer of a vehicle driven negligently by Mr. Morris. The Morris vehicle had a $30,000 limit for all persons injured as a result of a single accident. The entire $30,000 was paid to the five people injured in the accident. Tudor and Harmon, two of the injured parties, received $2,383.57 and $2,037.55 respectively of the $30,000. They also sued Morris' estate and received judgments of $30,000 and $60,000 respectively. Tudor and Harmon looked to Nationwide for payment of their judgment and Nationwide refused to pay. Tudor and Harmon then brought a declaratory judgment action seeking to have the court declare their own insurers, Allstate and Lumbermens Mutual, uninsured motorists carriers under Virginia Code § 38.1–381(b) and (c). Tudor and Harmon reasoned that the statutory definition of uninsured motor vehicle should include "a motor vehicle covered by a company which denies payment of a personal injury judgment because its applicable limits ... of coverage are exhausted by payments to various claimants." *Id.* at 919–20, 224 S.E.2d at 157–58.

The Supreme Court of Virginia declined to adopt this interpretation of the statute. The court reasoned that in spite of the policy of construing such statutes liberally in favor of insurance protection for qualified claimants, the clear meaning of the statute did not support the construction urged by Tudor and Harmon. The court stated:

> [T]he General Assembly has decided, as a matter of public policy, to extend the benefits of uninsured motorist coverage only to those injured by a motor vehicle which is uninsured, and not to those injured by a motor vehicle which, though fully insured under the statute, is only partly insured as to claims presented.

*Id.* at 921, 224 S.E.2d at 159.

*Tudor* is controlling in the instant case. Although this case deals with *underinsurance* instead of uninsured motorist coverage, the relevant portion of the Virginia Code is the same. Therefore, this Court finds that under Virginia Code

§ 38.1–381(b), as construed in *Tudor*, the total amount of bodily injury coverage applicable to the operation or use of Mr. Oliver's vehicle (the underinsured motor vehicle) is $25,000, and $25,000 is the amount to be used in determining the extent of underinsurance coverage in the present case.

Therefore, this Court GRANTS defendant's Motion for Summary Judgment, in accordance with the above discussion.

The Clerk is DIRECTED to send a copy of this Order to counsel for the plaintiff and defendant.

IT IS SO ORDERED.