**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., Plaintiff,**

v.

**Etoile Cambell JOHNSON, Earl Manning, Jr. and Liberty Mutual Insurance Co., Defendants.**

Civ. A. No. 88–597–N.

United States District Court,
E.D. Virginia,
Norfolk Division.

April 3, 1989.

George Dancigers and Henry W. Austin, Jr., Heilig, McKenry, Fraim & Lollar, Norfolk, Va., for plaintiff.

Robert E. Pembleton, Richmond, Va., for Earl Manning, Jr.

Randy D. Singer, Willcox & Savage, Norfolk, Va., for Etoile Cambell Johnson.

Alan S. Reynolds, Reynolds, Smith & Winters, Norfolk, Va., for Etoile Cambell Johnson & Liberty Mut. Ins. Co.

MEMORANDUM OPINION
AND ORDER

CLARKE, District Judge.

This matter comes before the Court as a result of plaintiff's request for a declaratory judgment pursuant to 28 U.S.C. § 2201. On September 1, 1988, plaintiff, National Union Fire Insurance Company of Pittsburgh, Pa. ("National Union"), filed this action asking the Court to declare the ex-

---

tent of its liability under an uninsured motorist policy issued to defendant Manning. The case was heard by the Court on March 20, 1989. At the hearing, the parties stipulated to all the relevant facts surrounding plaintiff's potential liability on its uninsured motorist policy. The parties have orally argued the remaining questions of law, and the matter is therefore ripe for disposition.

The facts having been stipulated to by the parties are not in dispute. Mr. Johnson and Mr. Manning were in an automobile accident on September 24, 1987. Mr. Manning suffered personal injuries as a result of this accident and filed suit in the Circuit Court for the City of Norfolk, styled *Earl Manning, Jr. v. Etoile Cambell Johnson*, At Law No. 88–6602. In his state court action, Manning seeks $125,000 in damages. At the time of the accident, Johnson's vehicle was insured under a policy affording liability coverage of $100,000 per accident. Mr. Johnson's liability policy was issued by defendant Liberty Mutual Insurance Company ("Liberty Mutual"). Mr. Manning's vehicle was insured under a policy affording uninsured/underinsured motorist coverage of $500,000. The uninsured motorist coverage was contained in a policy issued by defendant National Union. Because of the other claims arising out of the accident, Liberty Mutual has paid out $96,-748.06 of its $100,000 liability coverage. Thus, there is only $3,251.94 remaining to be dispersed under the Liberty Mutual policy.

Plaintiff National Union argues that it is not obligated to pay out any of its underinsured coverage unless Manning obtains a judgment in his state court action greater than $100,000, the total liability coverage provided by the Liberty Mutual policy. Defendant Manning contends that National Union is obligated to provide coverage up to the $500,000 policy limit under its underinsured policy if he obtains a judgment greater than $3,251.94, the amount remaining on the Liberty Mutual liability policy.

This action is brought under the Court's diversity jurisdiction, 28 U.S.C. § 1332, and therefore requires the application of Virginia substantive law. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Plaintiff, National Union, argues that the Virginia Supreme Court's decision in *Tudor v. Allstate Insurance Co.*, 216 Va. 918, 224 S.E.2d 156 (1976), and this Court's decision in *Billings v. State Farm Automobile Insurance Co.*, 680 F.Supp. 778 (E.D.Va.1988) directly support its view that Manning must obtain a judgment in excess of Liberty's liability policy limits in order to collect on his uninsured/underinsured motorist provisions. The Court disagrees. It is noted that the parties have not cited, nor has the Court located, any decisions which squarely address this issue. If state law is unclear or unsettled, it is this Court's function to predict the rule that the Virginia Supreme Court would probably apply were the case before it. *Nature Conservancy v. Machipongo Club, Inc.*, 579 F.2d 873, 875 (4th Cir.) (per curiam), *cert. denied*, 439 U.S. 1047, 99 S.Ct. 724, 58 L.Ed.2d 706 (1978); *Meadow Ltd. Partnership v. Heritage Savings and Loan Association*, 639 F.Supp. 643, 653 (E.D.Va.1986).

In *Tudor*, Nationwide Insurance was the liability carrier of a vehicle negligently driven by Mr. Morris. The liability policy provided coverage of $20,000 for one person and $30,000 for all persons insured in a single accident. Allstate Insurance Company and Lumbermens Mutual Casualty Company provided uninsured motorist coverages which by their terms covered Tudor and Harmon. Nationwide paid its maximum liability of $30,000 to the five persons injured in the accident. Tudor and Harmon, two of the injured parties, received $2,383.57 and $2,037.55, respectively, of the $30,000. Tudor and Harmon also obtained judgments of $30,000 and $60,000, respectively, against Morris's estate. Morris's estate had no assets and could not respond to the claims, and Nationwide's coverage was exhausted. Tudor and Harmon then brought a declaratory judgment action seeking to have the court declare that Allstate and Lumbermens were liable as uninsured motor carriers.

The issue before the court in *Tudor* was whether an "uninsured motor vehicle" as

then defined in Section 38.1–381(c) includes "a motor vehicle covered by a company which denies payment of a personal injury judgment because its applicable limits of coverage are exhausted by payments to various claimants." *Tudor,* 224 S.E.2d 157–58. Section 38.1–381(c), at the time *Tudor* was decided, defined an "uninsured motor vehicle" as:

> [A] motor vehicle as to which there is no (i) bodily injury liability insurance and property damage liability insurance both in the amounts specified by § 46.1–1(8), as amended from time to time, or (ii) there is such insurance but the insurance company writing the same denies coverage thereunder for any reason whatsoever including failure or refusal of the insured to cooperate with such company ... A motor vehicle shall be deemed to be uninsured if the owner or operator thereof be unknown....

Va.Code § 38.1–381(c) (currently codified at § 38.2–2206(B)). The Virginia Supreme Court found that despite the policy of liberally construing uninsured motorist statutes as remedial in nature, the plain language of Section 38.1–381(c) could not be disregarded. *Tudor,* 224 S.E.2d at 158. The Virginia court accordingly held that the Morris vehicle was not an "uninsured motor vehicle." *Id.*

Tudor and Harmon argued that the Virginia court's holding in *Tudor* created the anomaly of allowing for recovery if the tortfeasor was unknown or uninsured, but denying recovery when the tortfeasor was underinsured. Thus, in some cases a person injured by an uninsured motorist had greater insurance protection than a person injured by an insured tortfeasor. *See, Nationwide Mutual Insurance Co. v. Scott,* 234 Va. 573, 363 S.E.2d 703, 704 (1988). The *Tudor* court acknowledged the anomaly but held that:

> [T]he General Assembly has decided as a matter of public policy, to extend the benefits of uninsured motorist coverage only to those injured by a motor vehicle which is uninsured, and not to those injured by a motor vehicle which, though

fully insured under the statute, is only partly insured as to claims presented. *Tudor,* 224 S.E.2d at 159.

In order to correct the anomaly, the Virginia General Assembly added language to former Code Sections 38.1–381(b) and (c) which are currently codified as Virginia Code §§ 38.2–2206(A) and (B). The pertinent additions made by the legislature in 1982 provide:

> (A) Where the insured contracts for higher limits, the endorsement or provisions for those limits shall obligate the insurer to make payment for bodily injury or property damages caused by the operation or use of an underinsured motor vehicle to the extent the vehicle is underinsured, as defined in subsection B of this section....

> (B) A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle....

Virginia Code § 38.2–2206(A) and (B) (formerly codified as § 38.1–381(b) and (c)).

The Virginia Supreme Court considered the impact of the 1982 amendments in *Nationwide Mutual Insurance Co. v. Scott,* 234 Va. 573, 363 S.E.2d 703 (1988). The issue before the Virginia court in *Nationwide,* was whether an insurance carrier may offset his underinsurance obligations by the aggregate of obligations due a claimant under multiple liability policies. *Nationwide,* 363 S.E.2d at 705. In *Nationwide,* Rhonda Scott was injured in a collision between two automobiles, one driven by Linwood Truman and the other by Dale Bower. Truman and Bower had liability insurance in the amount of $25,000 and $50,000, respectively. Nationwide had issued a policy to Scott which provided $100,-000 in underinsured motorist coverage. Both of the liability insurers conceded liability and paid Scott the full policy limits. Nationwide argued that it only owed $25,-000, the difference between its underin-

sured policy limit ($100,000) and the aggregate of liability insurance available to Scott ($75,000). Scott filed a declaratory judgment action seeking to determine the extent of Nationwide's liability. Scott argued that coverage for each vehicle should be considered separately and therefore she was underinsured as to Bower by $50,000 and Truman by $75,000.

The trial court agreed with Scott's interpretation, and the Virginia Supreme Court affirmed. The Virginia court in *Nationwide* initially noted that the legislative purpose behind the 1982 amendments "was to increase the total protection afforded by insurance to claimants injured or damaged by negligent motorists." *Id.* The Virginia court next examined the statutory language and held:

> [T]he statute as amended provides that the uninsured motorist endorsement obligates the insurer to pay a claimant damages caused by the operation of *an underinsured motor vehicle* to the extent *such vehicle* is underinsured, and that, definitionally, *a motor vehicle* is underinsured to the extent that liability coverage on *such vehicle* is less than the uninsured motorist coverage available to the claimant on account of the operation of *such vehicle.* If, as Nationwide contends, the General Assembly had intended the obligation under an underinsurance endorsement to be offset by the aggregate of obligations due a claimant under multiple liability policies insuring multiple vehicles, it would have included the plural as well as the singular form in its definition of the term "underinsured".

*Id.* at 705 (1988) (emphasis in original).

While the Virginia court in *Nationwide* does not cite to its earlier decision in *Tudor,* the court in *Nationwide* does note the anomaly created by the legislature's failure, prior to 1982, to define an underinsured motorist. The Court finds that while *Tudor* is still authoritative precedent as to the interpretation of statutory law, the statutory basis on which it was decided no longer exists because of the 1982 amendments. Both *Tudor* and *Nationwide* stand squarely behind the principle that the

courts should strictly follow statutory language when interpreting questions of uninsured/underinsured motorist coverage.

The plaintiff in the instant case argues that this Court's decision in *Billings v. State Farm Mutual Automobile Insurance Co.* supports its position that its liability on the underinsured policy is contingent upon Mr. Manning obtaining a judgment in excess of $100,000, the limit of Johnson's liability policy. In *Billings,* this Court found *Tudor* controlling and relied upon it in deciding an issue of statutory interpretation in that case. *Billings,* 680 F.Supp. at 783. Thus, *Billings* supports plaintiff's position in that it follows the principle of strict statutory interpretation set forth in *Tudor.*

In the instant case, Mr. Manning clearly meets the statutory definition of "underinsured" contained in Virginia Code § 38.2–2206(B). The amount of liability coverage available to Mr. Manning ($100,000) is less than total amount of uninsured motorist coverage ($500,000). As previously noted, there are no Virginia Supreme Court or Fourth Circuit decisions which are dispositive of the issue in this case. Thus, it is this Court's duty to determine how the Virginia Supreme Court would rule if this case were before it.

The Virginia court's statutory construction of the uninsured motorist statute in *Tudor* is instructive. The court in *Tudor* found that despite the policy of liberal construction consistently afforded uninsured motorist statutes, it could not ignore "the plain import of the words and phrases chosen by the General Assembly." *Tudor,* 224 S.E.2d at 158. Similarly, in *Nationwide,* the Virginia court closely scrutinized the words chosen by the General Assembly in its 1982 amendment to the uninsured motorist statute. *Nationwide,* 363 S.E.2d at 705.

This Court finds that the language used by the General Assembly in its 1982 amendment supports the plaintiff's view in the instant case. The statute refers to "the total amount of bodily injury and property damage coverage *applicable to the operation or use of the vehicle.*" Va.

Code § 38.2–2206(B) (emphasis added). In this case, the total coverage *applicable* to the operation of Mr. Manning's vehicle is $100,000, not the $3,251.94 which remains available for payment. Accordingly, Mr. Manning must obtain a judgment or establish a claim in excess of the coverage applicable ($100,000) before plaintiff National Union is obligated on its uninsured/underinsured policy provisions.

The Court recognizes that this holding creates the same anomaly which the Virginia General Assembly sought to correct when it amended the uninsured motorist statute in 1982. Thus, it is possible that a person injured by a tortfeasor with no insurance to have greater insurance protection than if the tortfeasor had been insured. *See, Nationwide,* 363 S.E.2d at 704. The Court finds, however, as did the Virginia court in *Tudor,* that the existence of such an anomaly does not justify judicial expansion of express statutory language.

Finally, the Virginia General Assembly corrected the anomaly by amending the uninsured motorist statute in 1988. As a result of the 1988 amendment, Section 38.-2-2206(B) reads as follows:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage applicable to the operation or use of the motor vehicle *and available for payment for such bodily injury or property damage, ... is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the vehicle.*[1]

Va.Code § 38.2–2206(B) (emphasis added). The Virginia legislature's recognition of the need to amend the statute in 1988 supports this Court's interpretation of the statute as it existed on September 24, 1987, the date of the automobile accident giving rise to this action.

Accordingly, it is ORDERED that defendant Manning must obtain a judgment in excess of the $100,000 liability policy of his codefendant Johnson, or establish a claim in excess of $100,000.01, before he may look to the $500,000 limit of his uninsured/underinsured policy with plaintiff National Union. Because of the 1988 amendment to Va.Code § 38.2–2206, this Court's holding is limited to causes of action arising after the 1982 amendment but prior to the 1988 amendment.

IT IS SO ORDERED.

---

**1.** The Virginia General Assembly in its 1988 amendment to Section 38.2–2206(B) defined the term "available for payment" as follows:

> "Available for payment" means the amount of liability insurance coverage applicable to the claim of the injured person for bodily injury or property damage reduced by the payment of any other claims arising out of the same occurrence.
> If an injured person is entitled to underinsured motorist coverage under more than one policy, the following order of priority of policies applies and any amount available for payment shall be credited against such policies in the following order of priority:

1. The policy covering a motor vehicle occupied by the injured person at the time of the accident;
2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured;
3. The policy covering a motor vehicle not involved in the accident under which the injured person is an insured other than a named insured.
Where there is more than one insurer providing coverage under one of the payment priorities set forth, their liability shall be proportioned as to their respective underinsured motorist coverages.