## CIRCUIT COURT OF ALBEMARLE COUNTY

Peter J. Williams

v.

Harleysville Mutual Ins. Co. and
Nationwide Mutual Ins. Co.

August 17, 1990

Case No. (Law) 4033-L

By JUDGE PAUL M. PEATROSS, JR.

This matter was submitted for decision by the Court on a stipulation of facts, briefs of counsel, and oral argument on July 27, 1990.

*Facts*

Plaintiff, Peter J. Williams, was injured on September 20, 1987, in Orange County, Virginia, while driving a van, owned by P. J. Williams, Inc., which was struck by a vehicle operated by Charles D. Shates. The Shates vehicle was insured by the liability insurance policy issued by Aetna Casualty & Surety Company (hereinafter referred to as "Aetna") with a single limit of $100,000.00.

Harleysville Mutual Insurance Company (hereinafter referred to as "Harleysville") issued a policy of insurance to P. J. Williams, Inc., insuring the van driven by Mr. Williams. The Harleysville policy provided that it agreed to "pay in accordance with the Virginia uninsured motorist insurance laws all sums the insured is legally entitled to recover as damages from the owner or driver of an un-insured motor vehicle." The policy defines an uninsured motorist vehicle as "a motor vehicle for which the sum of all liability, bonds, or policies at the time of an

accident provides at least the amount required by the Virginia Motor Vehicles Safety Responsibility Act but their limits are less than the limits of this insurance . . . ." The Harleysville policy had a single limit of $500,000.00.

At the time of the accident, Nationwide Mutual Insurance Company (hereinafter referred to as "Nationwide") had in full force and effect a policy of insurance issued to Julia H. Williams, wife of Peter J. Williams, plaintiff, insuring a 1967 International pickup and a 1987 Honda, which provided uninsured motorist benefits in the amount of $100,000.00 per person and $300,000.00 per accident. Peter J. Williams and Julia H. Williams resided in the same household, and as a result, Mr. Williams is an insured under Nationwide's policy.

Plaintiff, Peter J. Williams, obtained a judgment in the Fairfax County Circuit Court in the sum of $275,000.00, plus interest from date of judgment and costs as a result of his injuries sustained on September 20, 1987.

Prior to Mr. Williams's obtaining a judgment, his wife, Julia H. Williams, recovered a judgment in the amount of $250,000.00, plus 5% interest commencing June 1, 1988, against the Administrators of the Estate of Charles D. Shates, who died in the accident of September 20, 1987. Subsequent to the verdict of Mrs. Williams, Aetna filed an interpleader action, paying the balance of its policy, $89,894.00 into court. Mrs. Williams sued for, and was granted, summary judgment in the interpleader action, recovering the balance of Aetna's policy. In the interpleader action, Julia Williams filed a Cross-Bill seeking payment from Harleysville for all monies which remained unsatisfied after Aetna's $89,894.00 had been paid. In the same action, Harleysville filed a Cross-Bill for a pro rata contribution from Nationwide.

The Fairfax County Circuit Court held that Harleysville's uninsured motorist liability applied to the judgment amount in excess of Aetna's policy limits or $100,000.00. On Harleysville's Cross-Bill for a pro rata contribution

from Nationwide, the Court awarded $25,000.00 to Harleysville, representing one sixth of the amount paid by Harleysville.

After the verdict in the suit of Peter J. Williams, plaintiff, Harleysville, paid $145,833.33 in principal and $497.10 in interest to Peter J. Williams which it contends represents full satisfaction of the amount to which Mr. Williams is entitled under the uninsured motorist benefits from Harleysville under its policy and the Virginia uninsured motorist statute. Nationwide has paid nothing to Peter J. Williams. The Estate of Charles D. Shates has distributed $2,005.29 to Peter J. Williams towards satisfaction of the judgment obtained against it.

Peter J. Williams has filed this action seeking to collect the portion of the unsatisfied judgment from Harleysville. Nationwide has been joined as an additional party defendant in that its policy provides uninsured motorist benefits to Mr. Williams as well.

Harleysville's policy is silent on the question of payment of its benefits if other similar insurance is available to an insured. Nationwide's policy provides that its policy benefits are only available as excess insurance over any other similar insurance available.

### Issues Presented

1. Whether the amount of Underinsured Motorist coverage provided by the policies of Nationwide and Harleysville is determined by Aetna's policy limits or the amount Aetna had available for payment?

2. Is Nationwide liable for a pro rata share of the uninsured motorist benefits?

### Rulings of Law

1. The amount of Underinsured Motorist coverage is determined by Aetna's policy limits and not the amount of money Aetna had available for payment.

The instant case is governed by the omnibus statute in effect at the time of the accident on September 20, 1987. *See National Union v. Johnson*, 709 F. Supp. 676 (E.D. Va. 1989). Section 38.2-2206(A) requires an insurer to make payment for bodily injury or property damage caused

by the operation or use of an underinsured motorist vehicle to the extent the vehicle is underinsured, as defined by subsection B of this section. Va. Code § 38.2-2206(B) defines an underinsured motorist vehicle as follows:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage coverage *applicable to the operation or use of the motor vehicle*, including all bonds or deposits of money where security is made pursuant to Article 6 (Section 46.1-467 *et seq.*) of Chapter 6 of Title 46.1, is less than the total amount of uninsured motorist coverage afforded any person injured as a result of the operation or use of the verdict. (Emphasis added.)

Thus, in the case before the court, the question is the amount of insurance "applicable" to the Shates vehicle as being Aetna's policy limit ($100,000.00), or the actual amount of money remaining to be paid under the policy, which is zero dollars. The Court finds that the clear language of the statute means the amount of insurance applicable to the Shates vehicle, or $100,000.00. The federal courts are in accord with this finding. *See National Union v. Johnson*, 709 F. Supp. 676 (E.D. Va. 1989); *Billings v. State Farm*, 680 F. Supp. 778 (E.D. Va. 1988). The case of *Tudor v. Allstate Insurance Company*, 216 Va. 918, 224 S.E.2d 156 (1976), was a case where the Supreme Court of Virginia strictly construed the language of the statute, which this Court finds is appropriate to the facts as herein stated.

Lending credence to this finding, effective July 1, 1988, the General Assembly amended the statute in question changing the definition of an underinsured motorist vehicle to the following:

> A motor vehicle is "underinsured" when, and to the extent that, the total amount of bodily injury and property damage applicable to the operation or use of the motor vehicle *and available for payment* . . . is less than the total amount of uninsured motorist coverage afforded

any person injured as a result of the operation or use of the vehicle. (Emphasis added.)

Thus, this Court finds that the amendment to the statute causes the conclusion that "applicable" does not mean "available for payment." *See Forst v. Rockingham Poultry Marketing Cooperative, Inc.*, 222 Va. 270, 278, 279 S.E.2d 400, 404 (1981), which applied the established principal of statutory construction that two different terms used in the same statute must be presumed to mean two different things.

Therefore, the Court finds that the Shates vehicle was underinsured only to the extent that Mr. Williams obtained a judgment in excess of Aetna's policy limits of $100,000.00. Therefore, the plaintiff is entitled to $175,000.00 in underinsured motorist benefits.

2. Nationwide is not liable for a pro rata share of the underinsured motorist benefits because of the language in Nationwide's policy, which establishes that Harleysville is the primary underinsured motorist carrier, and Nationwide's coverage is only excess.

In this case there are two uninsured motorist coverage policies, which can be combined, and the question is how the liability should be apportioned, if at all. Under the omnibus statute in effect at the time of this accident, courts have held that benefits under the various policies should be aggregated in order to determine the extent of the uninsured motorist benefits.

The policy in question provided by Harleysville is silent on the question of excess insurance over and above any other similar insurance available to an insured. The policy in question provided by Nationwide is not silent and provides as follows:

E. Other Insurance:
With respect to bodily Insured while occupying a motor vehicle not owned by the Named Insured, this insurance shall apply only as *excess insurance* over any other similar insurance available to such Insured and applicable to such vehicle as primary insurance. (Emphasis added.)

The Court finds that the "other insurance" clause of Nationwide's uninsured motorist endorsement clearly places it in the position of being excess to Harleysville's coverage. The clause is applicable to this case because all of the conditions have been fulfilled as follows.

Mr. Williams, the injured person herein, was an insured under the Nationwide policy, which was issued to his wife because he is the spouse of the named insured.

The vehicle occupied by Mr. and Mrs. Williams was not owned by Nationwide's named insured, Mrs. Williams, but rather by Harleysville's named insured, the P. J. Williams Company, Inc.

The Harleysville policy has a UM endorsement, which is "similar insurance" to Nationwide UM coverage. The Harleysville coverage is available to Mr. Williams, as the van which Mr. and Mrs. Williams occupied was listed on the vehicle schedule of the Harleysville policy.

The Court finds that the case of *State Farm v. United Services A. A.*, 211 Va. 133 (1970), confirms the validity and applicability of the "other insurance" clause in this case. Addressing the validity of the "other insurance" clause, the Court stated at pages 137 and 138:

> We see nothing in the excess coverage clause involved herein which adds to or restricts the uninsured motorist statute. It does not affect an insured's right to recover under the uninsured motorist statute. The excess coverage clause merely provides an orderly process for determining the distribution of liability among several insurance carriers. Code § 38.1-281(b) requires that the insured be paid "all sums" he is legally entitled to recover as damages from the uninsured motorist within the limits of the policy. The excess coverage clause does not conflict with that requirement but only requires the exhaustion of the primary coverage, here GEICO, before the excess coverage comes into play. That being the case, the clause is valid.

Accordingly, the Court finds that Harleysville must exhaust its limits before Nationwide is required to make any payment. Under the facts of this case, Harleysville

should make the entire payment required, since it has sufficient limits to satisfy the plaintiff's judgment and no pro rata coverage is applicable.