## CIRCUIT COURT OF FAIRFAX COUNTY

James E. Hollar

v.

Sean S. Schroeder,
State Farm Mutual Ins. Co.,
and Fairfax County

April 15, 1994

Case No. (Chancery) 130435

By Judge Stanley P. Klein

In this declaratory judgment action, plaintiff James E. Hollar requests that this Court determine the responsibilities of defendants State Farm Mutual Insurance Company and Fairfax County, Virginia, to provide liability coverage to defendant Sean S. Schroeder arising out of an automobile collision in which Hollar was injured. The parties submitted an agreed Stipulations of Fact resolving all relevant factual issues. The Court heard oral argument and has subsequently reviewed the briefs and authorities submitted by State Farm and the County.

### I. *The Factual Background*

On February 21, 1990, Hollar, while acting within the scope of his employment as a deputy sheriff for the County, was operating a motor vehicle owned by the County, when it was struck by a motor vehicle operated by Schroeder. At the time of the accident, Schroeder was covered by a policy of insurance issued by State Farm, which provided bodily injury liability coverage of $50,000 per person (the Schroeder policy). At all relevant times, the County qualified as a self-insurer pursuant to § 46.2–368(B) of the Code of Virginia and had obtained a Certificate of Self Insurance from the Division of Motor Vehicles. The extent of the County's coverage is unlimited. On the day of the accident, Hollar also maintained insurance on his three personally-owned

motor vehicles with State Farm. His policy (the Hollar policy) provided uninsured (UM)/underinsured (UIM) limits of $50,000/$100,000. State Farm has tendered the full policy limits of the Schroeder policy.[1] As the County's liability coverage is unlimited, State Farm and the County agree that Schroeder was underinsured for the full amount of any recovery by Hollar in excess of Schroeder's $50,000 liability coverage.[2]

As the underinsurance coverage is unlimited, Hollar takes no position on the remaining issues for the Court to determine. State Farm concedes that it provides the first $50,000 of underinsurance coverage. It asserts, however, that it is entitled to the credit for the $50,000 provided by the Schroeder policy and therefore is not responsible for any sum above Schroeder's liability coverage. The County asserts that the underinsurance coverage for each of the three vehicles under Hollar's policy with State Farm must be "stacked," thereby providing $150,000 of underinsurance coverage. The County further argues that it is entitled to the $50,000 credit from the payment to be received from the Schroeder policy, and consequently, State Farm's $150,000 of underinsurance coverage is primary and without offset. The Court will analyze both the (1) stacking and (2) credit issues.

## II. *The Stacking Issue*

Stacking of UM coverage will be permitted unless clear and unambiguous language on the face of the policy precludes such multiple coverage. *Goodville Mut. v. Borror*, 221 Va. 967, 970 (1981).[3] Any ambiguity in the policy will be interpreted against the insurance company. *Id.* The County concedes that the Hollar policy contained a UM endorsement containing the same anti-stacking language that the Supreme Court found unambiguous in *Goodville*. It argues, however, that the language contained in an additional endorsement to the policy titled, "6273H.5 Supplementary Uninsured Motorists Insurance," (the UIM endorsement) creates an ambiguity in the entire policy which

---

[1] The Court assumes that this policy is sufficient to satisfy the full property damage claim arising out of this accident.

[2] In *William v. City of Newport News*, 240 Va. 425 (1990), the Supreme Court held that self-insurers are subject to the requirements of the uninsured motorist statute, Code § 38.2–2206. In *Hackett v. Arlington County*, 247 Va. 41 (1994), this holding was extended to require underinsurance coverage under that statute.

[3] State Farm does not argue that this principle is not applicable to UIM coverage.

must be interpreted against State Farm. The Court rules that no such ambiguity exists.

The UIM endorsement in pertinent part reads as follows:

*6273H.5 Supplementary Uninsured Motorists Insurance*

(Bodily Injury — Property Damage — Limits —
Uninsured Motorists)
(Virginia)

It is agreed that, with respect to such insurance as is afforded by the policy for damages because of bodily injury and property damage caused by accident and arising out of the ownership, maintenance, or use of an uninsured motor vehicle, subdivision (a) of the definition of "uninsured motor vehicle" is amended to include "underinsured" motor vehicle, subject to the following provisions:

1. If limits of liability for such insurance are stated in the schedule of this endorsement or in the declarations, and subject to 2, below:

(a) the split limits so stated as applicable to bodily injury for "each person"/"each accident" and property damage for "each accident" shall apply in lieu of any limits therefor stated elsewhere in the policy, and subject to all the terms of the policy having reference thereto, shall be the total limit of the company's liability for all damages because of bodily injury and property damage as the result of any one accident arising out of the ownership, maintenance, or use of uninsured motor vehicles; or . . . .

*Schedule — Limit of Liability*

*Split Limits — See amounts in declarations*

*Single Limit — Bodily Injury and Property Damage — see amount in declarations* each accident, provided such limit shall first be: Bodily Injury *$25,000* each person, $50,000 each accident, Property Damage *$10,000* each accident.

The UIM endorsement specifically expands the definition of *uninsured* motor vehicle to include *underinsured* vehicles. Therefore, the antistacking language in the UM endorsement is applicable not only to uninsured vehicles but also to underinsured vehicles. The clear intent

of the UIM endorsement is to supplement the UM endorsement, as evidenced by its title "Supplementary Uninsured Motorists Insurance." *See Billings v. State Farm Mut. Ins. Co.*, 680 F. Supp. 778 (E.D. Va. 1988). The Court rejects the County's argument that the failure to include the anti-stacking language in the Limit of Liability section of the UIM endorsement is fatal to State Farm's position. *Goodville* requires that the anti-stacking provision be unambiguous, not redundant. The "Limit of Liability" section of the UIM endorsement contains no language which is inconsistent with the clear anti-stacking provision in the UM endorsement. As the provisions of the UM endorsement apply to underinsured vehicles by the specific language of the UIM endorsement, there is only one possible interpretation of these provisions. Consequently, stacking of the UIM coverage(s) is precluded.[4]

### III. *The Payment Credit Issue*

Although the parties differ on the ultimate resolution of this issue, they agree on the relevant statutory authorities. Virginia Code § 38.2–2206(B) establishes the general rule of priority of policies and credits in an underinsured context. In relevant part, it provides as follows:

> If an injured person is entitled to underinsured motorist coverage under more than one policy, the following order of priority of policies applies and any amount available for payment shall be credited against such in the following order of priority:
>
> 1. The policy covering a motor vehicle occupied by the injured person at the time of the accident;
>
> 2. The policy covering a motor vehicle not involved in the accident under which the injured person is a named insured
>
> . . . .

Absent any other authority, the County would provide the primary coverage in this case and would be entitled to the credit for the $50,000 paid by the Schroeder policy. This code section must, however, be read in conjunction with Virginia Code § 46.2–368(B), which sets out the responsibilities of the parties when a self-insurer such as

---

[4] As a result of this ruling, the Court need not decide the availability of stacking in an intra-policy context where there is no evidence of payment of separate premiums for each of the insured vehicles.

the County is involved. That statute provides in pertinent part as follows:

> However, protection against the uninsured motorist required under this section shall be secondary coverage to any other valid and collectable insurance providing the same protection which is available to any person otherwise entitled to assert a claim to such protection by virtue of this section.

State Farm concedes that this statute creates an exception to § 38.2–2206(B)'s general rule as to priority of coverage and that its underinsurance *coverage* is primary in this case. However, State Farm argues it is, therefore, also entitled to the *payment credit*, as the credit priority is set out in the same sentence in § 38.2–2206(B) as is modified by § 46.2–368(B). The County argues that § 46.2–368(B) modifies § 38.2–2206(B)'s priority of *coverage* scheme but not its priority of *credit* scheme.

The Supreme Court has not decided this narrow issue;[5] however, the Court finds the Supreme Court's analysis in *Dairyland Ins. Co. v. Sylva*, 242 Va. 191 (1991), and *William v. City of Newport News*, 240 Va. 425 (1990), instructive.

In *Dairyland Ins.*, the Supreme Court addressed the credit priority issue under § 38.2–2206(B) in a case involving coverage provided by two insurance carriers. Allstate Insurance Company argued, *inter alia*, that to provide the credit to the same company that had primary payment responsibility would cause an illogical result. In rejecting that argument, the Supreme Court found the language of the statute to be unambiguous and held that "where the disputed provisions of a statute are plain and unambiguous, as these are, we are not concerned with the logic or wisdom of the legislature; we apply the statute as written. *Id.* at 196 (citations omitted). The Court reasoned that the allowance of the credit was a discretionary matter to be determined by the General Assembly, not the courts. *Id.*

---

[5] State Farm argues that the Supreme Court impliedly decided this issue in *Hackett v. Arlington County, supra,* n. 2. However, the Court's opinion in *Hackett* specifically noted that the sole issue being decided was whether Arlington County was required to provide underinsurance to its employees under § 46.2–368(B). The issue that is now before this Court was seemingly determined by agreement in the trial court in *Hackett.* As this issue was not before the Supreme Court in *Hackett,* the decision therein cannot constitute authority in support of State Farm's position in this case.

The relevant language of § 46.2–368(B) is similarly unambiguous. That section modifies the *coverage* priority scheme of § 38.2–2206(B). Nowhere in § 46.2–368(B) is language included which is intended to modify the *credit* priority scheme of § 38.2–2206(B). If the General Assembly had intended to modify the credit priorities, it would have included language to effect that purpose. Mention of a specific item in a statute implies that other items not mentioned were not intended to be included in its scope. *Turner v. Wexler*, 244 Va. 124, 127 (1992). As the language of the statute is clear that § 46.2–368(B) does not affect the credit priorities of § 38.2–2206(B), this Court need not attempt to construe it. *Dairyland Ins.* at 194.

Even if this Court were to rule that an ambiguity exists, the result would be unchanged. In *William v. City of Newport News*, the Supreme Court addressed the legislature's intent in enacting § 46.2–368(B).

> The General Assembly did recognize a distinction in the financial implications of recovery from self-insurers and recovery from commercial insurers. The financial impact on a self-insurer for payments under the uninsured motorist protection provisions would not be limited by the amount of the premium negotiated between the insurance company and the employer as is the case if commercial insurance is involved. To compensate for this difference, recovery from a self-insurer of motor vehicles was made secondary to "any other valid and collectable insurance providing the same protection which is available to any person otherwise entitled to assert a claim to such protection" under the uninsured motorist protection provisions Code § 46.2–368(B).

*Id.* at 432. The *William* court further noted that after enactment of § 38.2–2206(B), a proviso was added to subsection (I) of that statute, which provided a self-insured employer a right to set-off any workers' compensation award against uninsured motorist coverage liability. The Court found this enactment to be further evidence of the General Assembly's intent to make a "distinction between commercial and self insurance of motor vehicles previously recognized in Code § 46.2–368." *William* at 433.

The policy behind this distinction is promoted by reserving the credit to the self-insurer while making its coverage secondary. The commercial insurer would have to pay out the full extent of the cov-

erage obtained by its insured through payment of a premium, before the self-insurer could be liable for any sum. If the Court were to construe § 46.2–368(B) in the manner suggested by State Farm, the legislative intent would at least be hindered, if not, as in this case, totally defeated. If State Farm is given the $50,000 payment credit herein, its underinsurance coverage of $50,000 will be totally set off by the credit, and the County will therefore bear the entire burden of the underinsurance coverage. This would effectively render § 46.2–368(B) a nullity, contrary to the legislative intent set out in *William.* Such a construction of this statute could not have been intended by the General Assembly.

For each of the above reasons, this Court holds that § 46.2–368(B) does not modify the credit priority scheme of § 38.2–2206(B), and the County is entitled to the payment credit afforded by the Schroeder policy.