## CIRCUIT COURT OF LOUISA COUNTY

Henry A. Kennon

   v.

Virginia Municipal Liability Pool
and Nationwide Mutual Ins. Co.

August 25, 1992

Case No. 2720

BY JUDGE JAY T. SWETT

This case raises a number of questions regarding the applicability of Virginia's uninsured motorist insurance laws to local government group self-insurance pools. The plaintiff is Henry A. Kennon. The defendants are the Virginia Municipal Liability Pool and the Nationwide Mutual Insurance Company. The issue to decide is whether the Virginia Municipal Liability Pool (VMLP) provided $25,000.00 of uninsured motorist coverage or $1,000,000.00 of uninsured motorist coverage to employees of the County of Louisa, including the plaintiff, Louisa County's Sheriff. VMLP and Nationwide have filed crossclaims against one another claiming that the other's uninsured motorist coverage is primary. VMLP has also filed a counterclaim against Sheriff Kennon seeking to recover the amount of $16,767.88 paid to Sheriff Kennon which VMLP claims was paid in error.

All parties have filed motions for summary judgment. A number of documents have been submitted which have been considered in deciding the summary judgment motions. After reviewing the pleadings, exhibits, and arguments of counsel, it is my conclusion that there are no material issues of fact in dispute and the case can be resolved on questions of law.

On November 18, 1987, Sheriff Kennon was injured in an automobile accident while a passenger in a vehicle owned by Louisa County. In a suit against Thomas Armstrong, the driver who caused the accident, Sheriff Kennon recovered a judgment for $250,000.00. State Farm Automobile Insurance Company, the liability carrier for Armstrong, paid Kennon its limits of liability coverage, $25,000.00. At the time of accident, Kennon's personal vehicles were insured through Nationwide Insurance. That policy provided uninsured motorist coverage of $50,000.00. The vehicle occupied by Kennon was insured through the VMLP. The heart of this controversy is the amount of uninsured motorist coverage available through VMLP. Kennon argues it is $1,000,000.00. VMLP argues it is $25,000.00.

Prior to the filing of this suit, Nationwide paid Kennon $33,500.00, and VMLP paid Kennon $16,500.00 for a total of $50,000.00[1] To date Kennon has received $75,000.00, $25,000.00 from State Farm, $33,500.00 from Nationwide and $16,500.00 from VMLP. In this suit, Kennon seeks $175,000.00, the uncollected amount of his judgment, which he contends should be paid by either VMLP or Nationwide or both.[2]

The documents submitted by the parties show that on June 26, 1986, the Board of Supervisors of Louisa County passed a resolution authorizing Louisa County to become a member of the Virginia Municipal Liability Pool. The VMLP pool was created pursuant to the provisions of Va. Code § 15.1–503.4:1 *et seq.* Under this Act, the General Assembly authorized counties to form self-insurance pools to provide insurance coverage for pool members and their employees. Section 15.1–503.4:3 states that the pools can provide casualty, property, group life, accident and health, and automobile insurance. The resolution provided that Louisa would join the pool for a three-year period beginning July 1, 1986. Under the resolution, Mr. Robert L. Johnson, Chairman of the Board of Supervisors, was specifically authorized to act on behalf of Louisa County in order for it to join the VMLP.

---

[1] VMLP claims it sent a second check to Kennon in the amount of $267.88 for additional uninsured motorist benefits, so Kennon may have received $16,767.88 from VMLP.

[2] Kennon's claim against Nationwide is that Nationwide is required to pay the full $50,000.00 of uninsured motorist coverage to Kennon unless VMLP is found to owe $175,000.00 under its uninsured motorist coverage.

On July 1, 1986, Louisa County entered into a "Member Agreement" with the Virginia Municipal Self-Insurance Association and the Virginia Municipal Underwriters, Inc. Mr. Johnson signed the Agreement as Chairman of the Louisa County Board of Supervisors. Mr. Johnson also signed an "Annex" to the agreement listing the available coverage and limits of liability for the period from July 1, 1986, to June 30, 1987. The Annex listed automobile liability coverage of "$1,000,000.00 per occurrence and uninsured motorist coverage of $25,000/$50,000/$10,000 per occurrence." Louisa County's "contribution" for this coverage for the one year was $60,957.00.

Louisa County continued as a member of the pool for the year July 1, 1987, to July 1, 1988. To continue membership, Mr. Johnson, on behalf of Louisa County, signed a "Renewal Cover Page to Member Agreement" in which the liability and uninsured motorist coverage amounts continued the same, $1,000,000.00 for liability and $25,000/$50,000/$10,000 for uninsured motorist coverage. Page two of the Renewal Cover Page contained the following provision:

V. *Virginia Uninsured Motorist Rejection*
Having received the notice required by § 38.2–2202 of the Code of Virginia, the designated member elects uninsured motorist coverage within the limits set forth above and rejects a higher limit as allowed by § 38.2–2206 of the Code of Virginia.

In 1986, the General Assembly enacted legislation to allow for the creation of local government group self-insurance pools. The purpose of the legislation was to provide an alternative method by which local political subdivisions could obtain insurance coverage. In § 15.1–503.4:1, the General Assembly recognized that political subdivisions were faced with the prospect of not being able to obtain insurance protection through insurance companies or that the costs of doing so was unduly burdensome. Group self-insurance pools were not considered insurance companies or insurers with the exception that such pools were subject to the Unfair Trade Practices Act and the Insurance Information and Privacy Protection Act. § 15.1–503.4:9. Self-insurance pools created under the statute did have to be approved by the State Corporation Commission. § 15.1–503.4:6. The types of insurance available through a self-insurance pool included most conventional forms of insurance available from private carriers. § 15.1–593.4:3.

The legislation creating local government group self-insurance pools contained two important statutory references. Under § 15.1–503.4:4, a group self-insurance pool was deemed a "self-insurer for motor vehicle security under § 46.1–395."[3] With regard to uninsured motorist coverage, the statute provided as follows:

> Additionally, a group self-insurance pool shall not be subject to the provisions of § 38.2–2206 relating to uninsured motorist coverage unless it elects by resolution of its governing body to provide such coverage to its pool members.

The principal dispute between the parties involves the proper construction of the above language. The plaintiff argues that VMLP elected to provide uninsured motorist coverage for the year July 1, 1987, to July 1, 1988. Having elected to provide the coverage, the plaintiff argues that all provisions of § 38.2–2206 are applicable to the pool, including the notice requirements of § 38.2–2202(B). On the other hand, VMLP pool argues that it never elected to be subject to § 38.2–2206 but rather decided to offer minimum uninsured motorist limits to its members. In the alternative, VMLP argues that if it was subject to § 38.2–2206, the provisions of that section were met because the County of Louisa did reject higher uninsured motorist limits for the policy year July 1, 1987, to June 30, 1988.

As the parties correctly argue, the construction of the applicable statutes involve two separate and perhaps, under these circumstances, competing if not conflicting policies. As argued by the plaintiff, the Supreme Court of Virginia has stated that the legislative purpose of requiring uninsured motorist coverage is to assure adequate insurance protection to those injured by uninsured or underinsured motorists. *See, Grossman v. Glens Falls Insurance Co.,* 211 Va. 195 (1970). The provisions providing for uninsured or underinsured motorist coverage are remedial in nature and are to be liberally construed in favor of coverage. *Bryant v. State Farm Insurance Co.,* 205 Va. 897 (1965).

On the other hand, as argued by the defendant, the General Assembly recognized that local political subdivisions such as Louisa County must be able to acquire the equivalent of insurance protection and approved the group self-insurance pool as a means for the

---

[3] In 1989, § 46.1–395 was recodified as § 46.2–368.

spreading of risks, to minimize changes in insurance needs, and to assure that financial contributions made by political subdivisions further the interest of the public and the local government body. While these policy considerations are important, the resolution of the present controversy must rest on the construction of the statutes involved.

As indicated, the County of Louisa became a member of the VMLP for a three-year term beginning on July 1, 1986. For the first year, beginning July 1, 1986, the automobile liability coverage provided by VMLP was $1,000,000.00 per occurrence and uninsured motorist coverage of $25,000/$50,000/$10,000 per occurrence. The uninsured motorist limits were the minimum limits then required by § 46.2–472.[4] There were no higher limits offered to the County of Louisa by VMLP in 1986. The coverage of $25,000/$50,000/$10,000 was all the uninsured motorist coverage offered by the VMLP to Louisa County.[5]

On June 15, 1987, VMLP sent a "Renewal Cover Page to Member Agreement" which listed the coverage and limits of liability, deductibles, and Louisa County's contribution for the year beginning July 1, 1987.[6] Included with the June 15, 1987, letter from Adminis-

---

[4] In 1989, the required minimum limits were increased to $25,000/$50,000/$20,000 per occurrence under § 46.2–472.

[5] A copy of the Virginia Municipal Self-Insurance Association Constitution and By-Laws and the Financial Plan dated June 23, 1986, indicates that the only uninsured motorist coverage that would be available to members of the VMLP were the minimum limits.

[6] Ms. Margaret A. Nichols, Administrator of the VMLP, sent documents to VMLP members regarding membership renewal for the year beginning July 1, 1987. Ms. Nichols' cover letter dated June 15, 1987, contained the following paragraphs on the issue of uninsured motorist coverage for the year beginning on July 1, 1987:

Unlike insurance companies, the Virginia Municipal Liability Pool is not required to provide uninsured motorist coverage to its members; however, the VMLP provides minimum statutory limits. Minimum statutory limits are $25,000 for bodily injury or death to one person; $50,000 for bodily injury or death to two or more persons, and $10,000 for damage to property.

By offering uninsured motorist coverage, the VMLP is required to comply with § 38.2–2206 of the *Code of Virginia* which provides that an insured's (member's) uninsured motorist coverage shall *equal* the limits of the liability coverage *unless* the insured rejects the additional uninsured motorist coverage. Further, the law requires

trator Nichols was a notice that tracked verbatim the language of § 38.2–220(B). Each member was instructed to review the Renewal Cover Page, have it signed by the authorized representative and return the original to the VMLP.[7]

Section 15.1–503.4:4 specifically states that a group self insurance pool such as VMLP is not required to provide uninsured motorist coverage pursuant to § 38.2–2206 unless the pool "elects by resolution of its governing authority to provide such coverage to its pool members." The VMLP concedes that it elected to provide uninsured motorist coverage to pool members for the year beginning July 1, 1987. By doing so, it became "subject to" § 38.2–2206 which relates to uninsured motorist coverage.

Section 38.2–2206 specifically deals with uninsured motorist insurance coverage and is part of Chapter 22 which regulates liability insurance policies. It requires that liability insurance policies relating to the ownership, use, or maintenance of motor vehicles contain a provision providing coverage to those injured by the operator of an uninsured motor vehicle with limits not less than those required by § 46.2–100.[8] Section 38.2–2206 further provides that the limits for uninsured motorist coverage shall equal the limits of liability coverage "unless the insured rejects the additional uninsured motorist insurance coverage by notifying the insurer as provided in subsection

---

that attached notice be included with the policy.

The VMLP's financial plan does not make any provision for offering uninsured motorist coverage greater than $25,000/$50,000/$10,000 as described above, and your contribution does not cover the cost of greater limits. Rejection of higher limits is deemed necessary for strict compliance with Virginia statutes and protection of the Pool's assets. Rejection of the higher limits is accomplished when you sign and return the Renewal Cover Page to the Member Agreement.

[7] The Renewal Cover Page was not returned to VMLP until sometime well after July 15, 1987. It may have been as late as September 3, 1987, based upon the deposition of Administrator Nichols. In any event, the Renewal Cover Page was returned more than twenty days after the renewal materials were sent by Administrator Nichols on June 15, 1987.

[8] Section 46.2–100 is the definition section for Title 46.2 dealing with Motor Vehicles. Section 46.2–100 does not expressly set forth limits of insurance. It does define "Financial responsibility" which refers to § 46.2–472. Section 46.2–472 provides minimum limits for motor vehicle liability insurance, specifically $25,000/$50,000/$20,000. In 1987, the minimum limits were $25,000/$50,000/$10,000.

B of § 38.2–2202." Subsection B of § 38.2–2202 provides that no new liability policy or original premium notice of liability insurance relating to motor vehicles should be issued or delivered unless it contains a specific statement printed in the form of a notice in bold face type which tells the insured that if the motor vehicle liability limits were greater than the minimum limits required under Virginia law, that the uninsured/underinsured insurance coverage will increase to the higher liability limit which will result in an increase in premium unless the insured notifies the agent or insurer of the insured's desire to reduce the uninsured/underinsured coverage within twenty days of the mailing of the policy or premium notice.[9] The final provision of § 38.2–2202(B) relieves the insurer of the obligation to provide the required statement as part of any renewal policy or subsequently mailed premium notice.

It is apparent that when the General Assembly enacted and later amended § 38.2–2202 and § 38.2–2206, it contemplated that these sections were primarily applicable to conventional liability insurance policies issued by insurance companies or insurers. The statutes use terms such as "policy," "contract of bodily injury or property damage liability insurance," "insurer," and "insured." The term "insured" is defined in § 38.2–2206(B) as referring to spouses, residents, relatives and guests of the named insured. The notice called for under § 38.2–2202(B) is written in terms designed to alert the purchasers of automobile liability insurance that they will be paying a greater premium if they purchase a policy with greater than the minimum liability limits unless they notify their "agent or insurer" of their desire to reduce coverage.

In contrast to the language in § 38.2–2202 and § 38.2–2206 is the language under Chapter 11.1 of Title 15.1 which establishes local government group self-insurance pools. For example, § 15.1–503.4:9 states that a self-insurance pool organized under Chapter 11.1 "is not an insurance company or insurer under the laws of this Commonwealth." The same section provides that the development, administration, and provision of insurance through group self-insurance pools "does not constitute doing an insurance business."

---

[9] As mentioned before, the required notice called for in § 38.2–2202(B) was provided verbatim by VMLP to the County of Louisa, together with the Renewal Cover Page sent on June 15, 1987.

Nevertheless, the General Assembly incorporated § 38.2–2206 in dealing with self-insurance pools and their providing uninsured motorist coverage. Section 15.1–503.4:4 provides that self-insurance pools shall not be subject to § 38.2–2206 unless it elects to do so. The necessary conclusion is that if self-insurance pools elect to provide uninsured motorist coverage, they are subject to § 38.2–2206. If the General Assembly intended to just require self-insurance pools which elect to provide uninsured motorist coverage to provide coverage in limits not less than the minimums required by § 46.2–472, it could have done so in clear unambiguous language. It did not.

A preliminary issue to resolve is what constitutes the agreement between Louisa County and the VMLP under which insurance coverage was available from July 1, 1987, to June 30, 1988. Based on the evidence presented, the court finds that the agreement between Louisa County and the VMLP for the relevant time period includes the document referred to as the "Renewal Cover Page to Member Agreement" signed by Mr. Robert L. Johnson as Chairman of the Board of Supervisors for Louisa County. The court rejects the argument that Mr. Johnson lacked authority to execute the document on behalf of the County of Louisa. Mr. Johnson signed the original member agreement dated July 1, 1986. The Louisa Board of Supervisors enacted a resolution on June 26, 1986, authorizing Mr. Johnson to "do all things necessary to enable Louisa County to become a member of the Association and the Pool including but not limited to the execution of the Member Agreement." The court also rejects the argument that the Renewal Cover Page is not part of the agreement because Mr. Johnson may not have signed the document until September of 1987.

The next issue to address is the argument of VMLP that there is an insufficient basis to find that the VMLP elected to provide uninsured motorist coverage to pool members. Section 15.1–503.4:4 provides that a self-insurance pool is not subject to § 38.2–2206 unless it elects, "by resolution of its governing authority" to provide such coverage to pool members. VMLP argues that the plaintiff cannot point to a resolution in which VMLP elected to provide uninsured motorists coverage, and therefore, the requirements of § 38.2–2206 are inapplicable. This court rejects that argument for two reasons. First, pursuant to Rule 4:11, the plaintiff filed a request for admissions asking the VMLP to admit that its decision to provide unin-

sured motorist coverage was based on action taken by its governing body. In its written response to the plaintiff's request for admissions sent on January 3, 1992, VMLP admitted this fact. Second, in a June 15, 1987, letter from VMLP's administrator, Ms. Margaret A. Nichols, she states that VMLP is offering uninsured motorists coverage and acknowledges that VMLP "is required to comply with § 38.2–2206 of the *Code of Virginia . . . .*" (Emphasis in original.) Accordingly, the court rejects VMLP's argument that it did not elect to be subject to the provisions of § 38.2–2206 relating to uninsured motorist coverage.

Having decided to provide uninsured motorist coverage to its members, VMLP elected to be "subject to" the provisions of § 38.2–2206 relating to uninsured motorist coverage. In this context, "subject to" means "governed or affected by." *Black's Law Dictionary*, 4th ed., p. 1594.

As noted earlier, the provisions of § 38.2–2206 appear more applicable to conventional insurance carriers than a group self-insurance pool. However, the legislature is presumed to have made an informed decision and that to require self-insurance pools to be "subject to" § 38.2–2206 regarding uninsured motorists coverage meant that pools which elect to provide such coverage thereby come under the mandate of that section. Subsection (A) of § 38.2–2206 contains the following language regarding uninsured motorists limits.

> Those limits shall equal but not exceed the limits of liability insurance provided by the policy unless the insured rejects the additional uninsured motorist coverage by notifying the insurer as provided in subsection B of § 38.2–2202.

VMLP argues that it complied with this requirement by sending to the County of Louisa a letter dated June 15, 1987, which included a document titled "Renewal Cover Page to Member Agreement" to be signed and returned by Louisa County. Page one listed uninsured motorist coverage as $25,000/$50,000/$10,000 per occurrence. Page two contained the following provision:

> V. *Virginia Uninsured Motorists Rejection*
> Having received the notice required by § 38.2–2202 of the Code of Virginia, the designated member elects uninsured motorist coverage within the limits set forth above and rejects a higher limit as allowed by § 38.2–2206 of the Code of Virginia.

The June 15, 1987, letter also included the notice referred to in Subsection B of § 38.2–2202. The notice advised Louisa County that if it purchased liability coverage with limits higher than the minimum required, the uninsured motorist coverage had increased to the higher liability limits and would result in a higher premium charge unless the VMLP was notified within twenty days that Louisa County requested lower uninsured motorist coverage.

It is not disputed that Mr. Johnson, on behalf of Louisa County, signed the Renewal Cover Page and returned it to VMLP. There is some dispute as to when he returned the document to VMLP. However, it appears to be undisputed that it was more than twenty days following the receipt of the June 15, 1987, letter from Ms. Nichols.

The court does not agree that VMLP complied with § 38.2–2206. While the VMLP and the County of Louisa may have intended to include uninsured motorist coverage at the minimum limits for the year 1987–1988, the evidence is that VMLP, having elected to be subject to § 38.2–2206, did not comply with the statute. The purpose of § 38.2–2206 was to require that any insurance policy with liability insurance coverage that exceeded minimum limits include uninsured motorist coverage at the higher limits unless those higher limits were rejected. While it is true that VMLP signed a document in which it purported to reject higher limits, the court cannot ignore the obvious fact that at no time were higher limits offered by VMLP. This statute contemplates that the higher uninsured motorist limits be *offered* to an insured, in this case Louisa County, *before* a rejection is made. If VMLP never offered the higher limits, then it cannot rely upon a written rejection when in fact there was nothing ever offered to reject.

Having found that VMLP did not comply with § 38.2–2206, the court must find that the applicable uninsured motorist limits are equal to the limits of the liability insurance provided, in this case $1,000,000.00.

The next issue is the proper allocation of available insurance. On the date of the accident, November 18, 1987, the negligent underinsured driver had $25,000.00 of liability coverage from State Farm. Nationwide had $50,000.00 of uninsured motorist coverage under Kennon's family automobile policy. VMLP provided coverage of $1,000,000.00. On June 7, 1989, Kennon recovered a judgment of $250,000.00. State Farm had paid its $25,000.00 of coverage leaving a balance of $225,000.00.

Prior to the filing of this suit, Nationwide paid Kennon $33,500.00 and VMLP paid $16,500.00. In its crossclaim, Nationwide argues that under § 38.2–2201, all of the uninsured motorist coverage from VMLP should be exhausted before it has any obligation to under its coverage. That argument is without merit. Section 38.2–2201 is limited to optional insurance available for medical expenses and has nothing to do with uninsured motorist coverage.

The answer to the propriety of coverage question is found in § 46.2–368(B). That section, and its predecessor in effect at the time § 46.1–395, provides that uninsured motorist protection available from a self-insurer is secondary to other valid and collectable insurance providing the same protection. Section 15.1–503.4:4 states that a group self-insurance pool is deemed a self-insurer for purposes of motor vehicle security citing § 46.1–395. Accordingly, there is $50,000.00 of available coverage from Nationwide and all should have been paid to the plaintiff. This leaves balance of $175,000.00 which should be paid by VMLP to the plaintiff.

Therefore, the court grants summary judgment in favor of the plaintiff against both defendants to the extent that VMLP's available coverage is equal to the available liability coverage. Judgment is rendered in favor of the plaintiff against VMLP in the amount of $175,000.00 less a credit for all payments previously made by VMLP to the plaintiff.

Summary judgment is granted in favor of the plaintiff against Nationwide Mutual in the amount of $50,000.00 less a credit of its payment of $33,500.00.

With regard to the crossclaims, the crossclaim of VMLP against Nationwide is granted to the extent that Nationwide's available coverage must be exhausted before the VMLP coverage is available. The crossclaim of Nationwide against VMLP is denied for the same reason.

The court will award interest on the amounts due the plaintiff from the defendants at the legal rate of interest beginning from April 16, 1991, the date that this suit was filed.